**Ronald A. SWILLUM, Respondent,**

v.

**EMPIRE GAS TRANSPORT, INC., and United States Fire Insurance Company, Appellants.**

**No. 13924.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 18, 1985.

Motion for Rehearing or Transfer
Denied Oct. 4, 1985.

Application to Transfer Denied
Nov. 21, 1985.

P. Pierre Dominique, Jefferson City, for appellants.

John W. Inglish, Inglish & Riner, P.C., Jefferson City, for respondent.

CROW, Judge.

Empire Gas Transport, Inc. ("employer") and its workers' compensation insurer, United States Fire Insurance Company, appeal from an award of the Labor and Industrial Relations Commission ("Commission") affirming an award of an administrative law judge of the Division of Workers' Compensation granting Ronald A. Swillum ("claimant") benefits under The Workers' Compensation Law, chapter 287, RSMo Supp.1981, for temporary total disability and medical expenses.

■ Appellants insist that the administrative law judge and the Commission erred in making certain findings and in failing to make certain other findings. Inasmuch as we review only the award of the Commission, not that of the administrative law judge, *Sample v. Monsanto Chemical Co.,* 664 S.W.2d 625, 626 (Mo.App.1984); *Conrad v. Royal Brokerage Company, Inc.,* 612 S.W.2d 13, 14[1] (Mo.App.1980), we disregard appellants' assignments of error concerning the administrative law judge.

Claimant, a truck driver, was injured January 15, 1982, when an "eighteen-wheeler" he was operating overturned. Facts found by the Commission and unchallenged by appellants are recited hereunder in quotation marks.

"On January 14, 1982, claimant finished work at approximately 5:00 p.m., bought two six packs of sixteen ounce cans of beer, and returned to his home in California, Missouri. Between 6:00 p.m. and 10:00 p.m. claimant consumed all twelve cans of beer and went to bed at approximately 10:30 p.m. There is no other evidence relevant to this case that claimant consumed any other intoxicant. Claimant arose at 2:00 a.m. and drove back to employer's plant in Jefferson City, Missouri, loaded his truck, which is a propane gas truck, and drove to Versailles, Missouri, arriving at Versailles, Missouri at approximately 3:45 a.m. Claimant unloaded his trailer at the em-ployer's plant and returned to Jefferson City, Missouri, to reload his truck.

"In order to comply with state truck weight limits, employer prohibits employees from filling its propane gas trucks in excess of 8,000 gallons of propane. Claimant knew about this rule and about the state law setting weight limits. In reloading, claimant set the meter on the pump which was filling his truck to shut off automatically at 8,000 gallons. The meter, however, failed to function, and the tank filled to 9,000 gallons. Claimant knew that he could drive to employer's plant approximately one-quarter mile away and pump off the excess gas. Although he knew his truck was overloaded and that this was a violation of company rules and state law, he failed to pump out the excess.

"Claimant's destination was Horseshoe Bend, Arkansas, and claimant knew that the specified route included taking U.S. Highway 63 from Jefferson City, Missouri, all the way to West Plains, Missouri. This route had been specifically designated by the employer. Claimant also knew that there was a truck weight station located between Licking, Missouri, and West Plains, Missouri on U.S. Highway 63 located at or near Willow Springs, Missouri. In order to avoid a confrontation at the weight station, claimant deviated from his designated route at Licking, Missouri, and turned off of U.S. Highway 63 onto Missouri State Highway 137. Claimant denied he did this for any purpose of his own. Claimant admitted that U.S. Highway 63 is easier to drive than Missouri State Highway 137. However, the difference in mileage between the two routes is insignificant.

"At approximately 8:00 a.m., three miles after claimant turned onto Missouri State Highway 137, he lost control of his truck and it overturned. Claimant attempted to telephone his employer to report the accident, but the employer could not understand what he was trying to say. Claimant was taken by ambulance to the Texas County Memorial Hospital

and treated for a head laceration. He was discharged from the hospital the following day.

"At 10:40 a.m., January 15, 1982, while in the emergency room at the hospital, claimant consented to a blood alcohol test. The report from the Ozark Clinical Laboratory showed the level of alcohol in claimant's blood to be 0.17%. The discharge summary stated claimant's blood alcohol content was 0.15% instead of the 0.17% indicated on the laboratory report. The report of the attending physician indicated a strong odor of alcohol on claimant's breath, and the nurse's records state that when claimant was checked into his room at 12:05 p.m. there was a strong odor of alcohol on his breath and clothing. Claimant attributed the strong odor of alcohol upon his person due to the presence of a bottle of ether alcohol in the cab of the tractor which spilled when the accident occurred. Claimant testified that he had not consumed any alcohol since 10:00 p.m. the preceding night and there was no evidence to contradict this testimony.

"Claimant admitted he was ticketed and pled guilty to failing to have his vehicle under control and claimant paid the fine."

Appellants' first point asserts the Commission erred in finding that the extent of claimant's intoxication "did not take him out of the scope and course of his employment." Specifically, say appellants, the Commission failed to consider § 577.030.-1(3), RSMo 1978,[1] which provided:

"If there was ten-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken."

Appellants emphasize that the test of claimant's blood within 3 hours after the accident "showed his blood alcohol content level to be 0.17%."

Appellants also argue in support of their first point that the Commission failed to consider "other indicia" of the extent of claimant's intoxication including (a) claimant's admission that when he phoned the employer's terminal they could not understand what he was talking about, (b) claimant's admission that the highway patrolman thought he could smell alcohol on claimant, (c) a note by the emergency room nurse that there was a strong odor of alcohol on claimant's breath and clothing, (d) a doctor's note at 12:05 p.m., January 15, noting "alcoholic breath," and (e) a physician's progress note stating "alcohol intoxicated & severe alcohol breath."

Appellants maintain that the evidence compelled a finding that claimant "was so physically unable to operate and control his vehicle that he cannot be deemed to have been working within the scope of his employment."

The law applicable to this contention is well settled in Missouri. In *Phillips v. Air Reduction Sales Co.*, 337 Mo. 587, 85 S.W.2d 551, 555 (1935), we find this:

"Appellants do not contend that there is anything in our Compensation Act which forfeits the right to compensation upon a showing that an employee had been drinking before going to work. Some states have made specific provisions concerning it.... If there should be similar provisions in our act, it is for the Legislature to provide them, not this court. Until the Legislature sees fit to do so, we cannot deny compensation because of intoxication, at least unless it was shown that the degree of intoxication was such that it could be held that the injury did not arise out of the employment because the employee could not have been engaged in it."

■ Cases since *Phillips* have consistently followed the rule that intoxication of an employee is a defense to a workers' compensation claim only if it be shown that the employee was intoxicated to such an

---

**1.** Section 577.030, RSMo 1978, was repealed effective August 13, 1982, by Laws 1982, pp. 682–83, § 1, and replaced by § 577.037, Laws 1982, p. 688. Subsection 1(3) of § 577.037 is identical with § 577.030.1(3), RSMo 1978.

extent that it was impossible for him to physically and mentally engage in his employment. *Page v. Green,* 686 S.W.2d 528, 532[8] (Mo.App.1985); *Brown v. Mid-Central Fish Co.,* 641 S.W.2d 785, 787[4] (Mo. App.1982); *McCue v. Studebaker Automotive Sales, Inc.,* 389 S.W.2d 408, 411–12 (Mo.App.1965); *Coonce v. Farmers Ins. Exchange,* 228 S.W.2d 825, 827–28[2] (Mo. App.1950); *O'Neil v. Fred Evens Motor Sales Co.,* 160 S.W.2d 775, 778–79[6] (Mo. App.1942).

The Commission considered the issue of claimant's intoxication and made the following findings, set off by quotation marks.

"The Commission finds in the instant case that the competent and substantial evidence does not support a finding that the claimant was intoxicated to such an extent that it was impossible for him to physically and mentally engage in his employment. The evidence is uncontradicted that at least ten hours had elapsed from claimant's final consumption of any intoxicating liquor and the accident. The evidence is also uncontradicted that prior to the accident claimant had been working for six hours. This six hour working period included the following: the claimant drove from his home in California to the employer's plant in Jefferson City; the claimant drove a tractor-trailer from Jefferson City to Versailles; the claimant returned in the tractor-trailer from Versailles to Jefferson City; the claimant then drove a tractor-trailer from Jefferson City to a few miles south of Licking, Missouri. The only conclusion the Commission can come to from this evidence is that claimant was physically and mentally capable of engaging in his employment. The fact that his blood alcohol level content was 0.17% is in no way determinative of the issue. From the evidence, the claimant did not abandon his employment due to intoxication."

■ Whether an employee was intoxicated to such extent that he could not be engaged in the furtherance of his employer's business at the time of injury was held to be a question of fact to be determined by the Commission in *O'Neil,* 160 S.W.2d at 778–79[5]. In reviewing questions of fact decided by the Commission, our inquiry is limited to whether, upon the whole record and considering the evidence in the light most favorable to the Commission's findings, the Commission could have reasonably made such findings and reached the result it did. *Strohmeyer v. Southwestern Bell Telephone Co.,* 396 S.W.2d 1, 3[1] (Mo.App.1965); *Lashbrook v. Clipper Manufacturing Co.,* 377 S.W.2d 785, 787[1, 2] (Mo.App.1964).

In *Page,* 686 S.W.2d 528, the employee's "[b]lood alcohol level was 232 mg.%" at the time he was hospitalized following an accident on his employer's premises. *Id.* at 531. In determining the effect of this on the issue whether the employee was too intoxicated to perform duties arising out of and in the course of his employment, the opinion states:

"... there is no evidence that he was [intoxicated] to the extent required, unless his blood alcohol content establishes that as a matter of law. We believe it does not. The effect of blood alcohol content can vary widely from person to person and from time to time. That it was well over the amount that constitutes prima facie evidence of intoxication when operating motor vehicles does not establish that it would have been impossible for appellant to physically and mentally engage in his employment. His ability to perform normally might have been affected, but not necessarily to the extent required to make intoxication a defense. Appellant was able to drive to the premises, perform some acts, and talk to the man on duty. Nothing indicates that it was impossible for him to work." *Id.* at 532.

In the instant case, contrary to appellants' first point, the Commission did consider the evidence of intoxication, as reflected by the Commission's findings of fact and the Commission's conclusion on the intoxication issue. The Commission decided, after weighing the evidence, that it

did not support a finding that claimant was intoxicated to such an extent that it was impossible for him to physically and mentally engage in his employment.

■ Upon the whole record, considering the evidence in the light most favorable to the Commission's finding on the intoxication issue, we hold that the Commission could have reasonably made that finding and reached the result it did. Claimant, on the morning of the accident, (a) drove from his home in California, Missouri, to Jefferson City, a distance he estimated as 23 or 24 miles, (b) drove the transport from Jefferson City to Versailles, Missouri, a trip that, according to claimant, required 35 or 40 minutes, (c) unloaded the transport in Versailles and drove it back to Jefferson City, (d) loaded the transport with propane gas in Jefferson City, and (e) drove the transport to a point some 3 miles south of Licking, Missouri, where it overturned. These activities occurred during a period of some 6 hours and we judicially know that the aggregate distance driven by claimant on the morning of the accident was at least 170 miles.[2] The fact that claimant's blood contained alcohol in a percentage amounting to prima facie evidence that he was intoxicated did not, as explained in *Page*, 686 S.W.2d at 532, compel a finding that he was physically and mentally unable to engage in his employment. Indeed, claimant's activities during the 6 hours preceding the accident constituted substantial evidence that he was not incapacitated to the extent that he could not carry out his duties.

Appellants' first point is denied.

**2.** Missouri courts take judicial notice of distances between localities. *State ex rel. Alton R. Co. v. Shain*, 346 Mo. 681, 143 S.W.2d 233, 238[8] (banc 1940); *State v. Kenyon*, 343 Mo. 1168, 126 S.W.2d 245, 253–54 (1938); *J.H.H. v. J.D.*, 662 S.W.2d 893, 895[2] (Mo.App.1983); *Walsh v. Table Rock Asphalt Construction Co.*, 522 S.W.2d 116, 118[1, 2] (Mo.App.1975); *Griffin v. Doss*, 411 S.W.2d 649, 651 (Mo.App.1967); *Hood v. M.F.A. Mutual Insurance Co.*, 379 S.W.2d 806, 810[4] (Mo.App.1964).

**3.** Section 287.120.5, RSMo 1978, provides, in pertinent part: "Where the injury is caused ...

Appellants' second point assails the rule in *Phillips*, 85 S.W.2d 551, and its progeny, *supra*, that an employee's intoxication is no defense to a claim for workers' compensation benefits unless it is so severe that it is impossible for him to physically and mentally engage in his employment. Appellants insist that the rule is "contrary to public policy" in that it allows an employee who violates the law by operating a motor vehicle while intoxicated to nonetheless "benefit from his illegal activity" by receiving workers' compensation benefits if he is injured. Appellants beseech us to override *Phillips* and judicially adopt a rule "making intoxication a clear defense to compensation."

■ We have no such authority. Under Mo. Const. art. V, § 2 (1945), we are bound to follow the last controlling decision of the Supreme Court of Missouri. *Estate of Seabaugh*, 654 S.W.2d 948, 957[4] (Mo.App. 1983); *State v. Dunn*, 615 S.W.2d 543, 550[15] (Mo.App.1981). Any change in the *Phillips* rule will have to come from the Supreme Court of Missouri or the General Assembly.

Appellants' second point is denied.

Appellants' third point states:

"The ... Commission erred in failing to find that [claimant's] violation of the following safety rules took him out of the course and scope of his employment or alternatively in failing to reduce [claimant's] award by fifteen percent for failure to obey a reasonable safety rule as mandated by § 287.120 RSMo.[3] because:

from the employee's failure to obey any reasonable rule adopted by the employer for the safety of employees, which rule has been kept posted in a conspicuous place on the employer's premises, the compensation ... shall be reduced fifteen percent; provided, that it is shown that the employee had actual knowledge of the rule so adopted by the employer; and provided, further, that the employer had, prior to the injury, made a diligent effort to cause his employees ... to obey or follow the rule so adopted for the safety of the employees."

"A. [Claimant] willfully violated a company safety rule by deviating from [employer's] designated and mandatory route by taking a narrow and winding road for his own personal reason of avoiding a confrontation and a ticket for knowingly driving an overloaded truck;

"B. [Claimant] negligently overloaded his tank truck and knowingly and willfully operated it on Missouri highways in violation of a company safety rule and state law;

"C. [Claimant] knowingly and willfully operated his motor vehicle while intoxicated or under the influence of alcohol in violation of a company safety rule, state law, and § 391.15(2)(i) [4] and § 392.5(a)(1)(2) [5] of the regulations of the United States Department of Transportation."

In considering appellants' third point, we fail to understand how § 391.15, Federal Motor Carrier Safety Regulations, relied on by appellants in element "C" of their third point, applies to the situation here. Section 391.15 disqualifies a driver from operating a commercial motor vehicle upon conviction of, among other offenses, operating a motor vehicle while under the influence of alcohol if such offense be committed in the circumstances described in subsection (c)(1)(ii) thereof. We espy no evidence in

the record before us that claimant, on January 15, 1982, was disqualified from driving a commercial motor vehicle by reason of having previously been convicted of operating a motor vehicle while under the influence of alcohol. The only possible relevance of § 391.15, in our view, would be to demonstrate that claimant, by reason of his admitted familiarity with the Regulations, knew that a conviction for operating a motor vehicle while under the influence of alcohol in the circumstances described in § 391.15(c)(1)(ii) would disqualify him in the future from driving a commercial motor vehicle.

Be that as it may, we find no merit in appellants' third point. In explaining why, we deal first with appellants' contention that the Commission erred in failing to find that claimant's violation of the "safety rules" enumerated in elements "A," "B" and "C" of the third point "took him out of the course and scope of his employment."

■ The law applicable to this contention is stated in *Fowler v. Baalmann, Inc.*, 361 Mo. 204, 234 S.W.2d 11, 17[10, 11] (banc 1950):

"Mere disobedience of an order as to the detail of the work in hand or the mere breach of a rule as to the manner of performing the work are not generally sufficient to deprive an employee of his

---

4. Section 391.15, Federal Motor Carrier Safety Regulations, United States Department of Transportation, provides, in pertinent part:

"(a) General. A driver who is disqualified shall not drive a commercial motor vehicle....

"....

"(c) Disqualification for criminal misconduct—(1) General rule. A driver who is convicted of ... a disqualifying offense specified in subparagraph (2) of this paragraph is disqualified for the period of time specified in subparagraph (3) of this paragraph if—

"(i) The offense was committed after December 31, 1970; and

"(ii) The offense was committed while the driver was driving a motor vehicle in the employ of a motor carrier or in furtherance of a commercial enterprise in interstate, intrastate, or foreign commerce.

"(2) Disqualifying offenses. The following offenses are disqualifying offenses:

"(i) Operating a motor vehicle while under the influence of alcohol....

"....

"(3) Duration of disqualification for criminal misconduct—

"(i) First offenders. A driver is disqualified for 1 year after the date of his conviction ... if, during the 3 years preceding that date, he was not convicted of ... an offense that would disqualify him under the rules of this section."

5. Section 392.5, Federal Motor Carrier Safety Regulations, United States Department of Transportation, provides, in pertinent part:

"(a) No person shall—

"(1) ... be under the influence of an intoxicating liquor, within 4 hours before going on duty or operating, or having physical control of, a motor vehicle; or

"(2) ... be under the influence of an intoxicating liquor, while on duty, or operating, or in physical control of, a motor vehicle...."

right to compensation so long as he does not go out of the sphere of his employment. But compensation cannot be allowed when the employee goes outside of the sphere and scope of his employment and is injured in connection with an activity he has been expressly forbidden to undertake."

In *Fowler*, the employee, a flying instructor, had been scheduled to accompany a student pilot on a cross-country night flight. However, weather reports indicated unsuitable flying conditions along the route, causing the employee's supervisor to cancel the flight. The employee, however, despite being personally informed of the cancellation, nonetheless embarked on the flight, charging expenses to his employer. During the flight the employee was killed when the airplane crashed during a hard rain. Compensation to the employee's dependents was denied by the Commission for the reason that the accident did not arise out of and in the course of employment. That ruling was affirmed.

*Fowler* is the only Missouri case cited by appellants in support of their third point and, in our opinion, it does not support appellants' contention that claimant's violation of the "safety rules" removed him from the course of his employment. Indeed, *Fowler*, in holding that mere disobedience of an order as to the detail of the work or the mere breach of a rule as to the manner of performing it are not generally sufficient to deprive an employee of his right to compensation so long as he does not go out of the sphere of his employment, is contrary to appellants' position.

The Commission considered the effect of claimant's deviation from the assigned highway and made the following findings, set off by quotation marks.

"The employer/insurer also contends that when claimant deviated from his regular route, claimant removed himself from his course of employment. The Commission cannot agree with this contention. In order for a deviation to remove a claimant from his course of employment, it must be shown that the devi-

ation was aimed at reaching some specific personal objective. If an employee deviates from his assigned route for some reason having nothing to do with a private purpose, but perhaps merely in the exercise of his own judgment or preference as to the most desirable route, takes a route other than that prescribed by his employer, this should not be considered a deviation....

"The evidence is uncontradicted that claimant opted to take Missouri State Route 137 instead of his regular route of U.S. 63 in order to avoid a weight station. The difference in mileage between the two routes was insignificant. The claimant was not in pursuit of a personal mission, but opted instead to take a different route as a matter of judgment.

"This type of case, there being no personal deviation involved, is really not a deviation issue, but, is, as also contended by employer/insurer, a problem of a violation of the employer's instructions. However, the Commission cannot conclude that the claimant's decision to take Missouri State Route 137, admittedly in violation of the direction of his employer, removed claimant from his sphere of employment. The violation of instruction consisted of merely taking a different route while remaining in the course of performance of active duties, to wit: driving the load of propane gas to Horseshoe Bend, Arkansas. Even though claimant entered an unauthorized route, he was still on an errand in fulfillment of his duties at a time his employer could expect him to be working. The claimant was not disobeying the 'when' or 'what' but the 'how' part of his job. Disobedience as to 'how' the work is performed does not remove the activity from the sphere of employment...."

■ In making these findings, the Commission correctly applied *Fowler*. Claimant, when the accident occurred, was driving the transport he was hired to drive, hauling the cargo he was employed to haul, and heading toward the destination assigned by the employer. Highway 137,

while not the road designated by the employer, was nonetheless a logical one for claimant to use in view of his admitted purpose of avoiding the weight station. As to the other alleged violations of "safety rules," appellants cite no Missouri authority supporting the proposition that such infractions placed claimant outside the course of his employment. Indeed, *Fowler* refutes that premise.

Upon the whole record, considering the evidence in the light most favorable to the Commission's findings, we hold that the Commission could have reasonably found, as it did, that claimant's injury arose out of and in the course of his employment.

In so holding, we reject appellants' argument that claimant "deviated from the specified route for his own personal benefit." Appellants base this hypothesis on the fact that the employer had a policy that drivers who knowingly drove overloaded transports and were caught had to pay the fines from their own funds. Consequently, say appellants, it was in claimant's interest to avoid an overweight ticket.

In that regard, claimant testified that had he been stopped at the weight station on highway 63 between Licking and West Plains, he would have been detained there until the employer sent a truck to pump off the excess propane. This, of course, would have delayed the delivery. Consequently, claimant's use of highway 137 could have benefited the employer by ensuring that the shipment would not be delayed, while at the same time benefiting claimant by enabling him to avoid a ticket for being overloaded.

■ Bearing in mind that at the time of the accident claimant was engaged in the delivery of the employer's propane and was not on a private mission of his own, we deny appellants' contention that claimant departed the course of his employment by taking highway 137 to avoid the weight station.

The second component of appellants' third point, as previously noted, is that the Commission erred in failing to reduce the award by 15 per cent "for failure to obey a reasonable safety rule."[6] On that issue, the Commission adopted the following finding by the administrative law judge.

"In the decision rendered in Brown vs. Weber Implement & Auto Company, 206SW(2) 350, the Supreme Court of Missouri stated that a violation of a company rule has to be causally connected to the employee's injury. In this case, the employee violated two company rules by not driving on U.S. Highway 63 to West Plains, Missouri, and driving his vehicle overloaded. However, neither violation was the direct or proximate cause of the accident and his subsequent injury.

"I find the employer-insurer has failed in the burden of proof to establish the affirmative defense of violation of a company rule that was the proximate cause of the accident and injury to the employee. Likewise, the penalty as set forth in Section 287.120(5) RSMo., 1978, as amended, shall not apply."

■ Under § 287.120.5, RSMo 1978, and *Brown v. Weber Implement & Auto Co.*, 357 Mo. 1, 206 S.W.2d 350, 355 (1947), the failure of an employee to obey a safety rule does not authorize the reduction of an award unless the injury is caused by such failure. That is, there must be a causal connection between the violation of the employer's safety rule and the employee's injury.

■ In the instant case, the Commission declined to find that claimant's injury was caused by his failure to obey the "safety rules." Absent such finding, the Commission had no authority under § 287.120.5, RSMo 1978, to reduce the award.

Appellants' third point is denied.

Appellants' final point asserts that the Commission erred in finding that claimant's

---

6. See § 287.120.5, RSMo 1978, quoted in pertinent part in footnote 3, *supra.*

injury was not proximately caused by his violation of "company rules" in driving his transport while it was overloaded and in failing to take highway 63 to West Plains. Appellants argue that both violations "were the precipitating causes of the accident." Appellants theorize that had claimant not overloaded his transport, there would have been no need to deviate from highway 63. That deviation, say appellants, was "from a straight, wide road, offering good driving conditions, to a narrow winding road with no shoulders."

Appellants assert that claimant's inability to control the overloaded transport on the narrow road was due to his "driving at a speed too fast for the circumstances," and his "physical impairment due to alcohol."

Claimant, testifying about the accident, explained that he "was in an 'S' curve." He estimated his speed at 45 miles per hour. Asked what happened, claimant replied: "Well, I made the first curve. When I come out of the last curve, the trailer went off the road and I couldn't hold her." Then, this:

"Q.   Do you know why?

A.   I didn't have no understanding at the time why it went off.  But I do know the trailer come down off the road and I couldn't hold her.

Q.   Did you go off ... do you mean you went off on the shoulder?

A.   The trailer did.

Q.   On the right or left?

A.   It would be on the right-hand side.

Q.   Then what did you do when it went off the right-hand side?

A.   I tried to keep it up in the road.

Q.   And what happened?

A.   Well, it got away from me.

Q.   Well, what happened to the trailer and what happened to the tractor?

A.   The trailer turned over and the tractor, I guess, went on its side.  And the tractor went off to the left-hand ... the left side of the road."

■ Whether claimant's injury was caused by his "violation" of the rules enumerated in appellants' final point was a fact issue for the Commission to resolve. The Commission resolved it in favor of claimant and against appellants.  Bearing in mind that our review of this finding is limited to whether, upon the whole record and considering the evidence in the light most favorable to the Commission's finding, the Commission could have reasonably made such finding and reached the result it did, we hold that the Commission's finding cannot be disturbed.

This is not a case where an employee was injured immediately after commencing work.  Claimant had been on the job some 6 hours and had driven the transport some 170 miles.  He was alert to what was occurring at the time of the accident and was obviously capable of driving; otherwise, he would never have reached the accident site.

Emphasizing that we must affirm the Commission's award if it is supported by competent and substantial evidence on the whole record and that we cannot substitute our judgment on the evidence for that of the Commission, *Davies v. Carter Carburetor, Division ACF Industries, Inc.*, 429 S.W.2d 738, 741[2] (Mo.1968); *Howe v. Morris*, 426 S.W.2d 353, 355[3] (Mo.1968), we deny appellants' final point.

The Commission's award is affirmed.


PREWITT, C.J., HOGAN, P.J., and MAUS, J., concur.