George **JACKSON**, Plaintiff-Appellant,

v.

**RISBY PALLET AND LUMBER COMPANY, INC., and EBI Companies, Defendants-Respondents.**

No. 15026.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 25, 1987.

Motion for Rehearing or Transfer Denied Sept. 8, 1987.

Application to Transfer Denied Oct. 13, 1987.

Winston Buford, Eminence, Milton B. Garber, Fulton, for plaintiff-appellant.

George R. Wilhoit, Jr., Hyde, Purcell, Wilhoit, Spain, Edmundson and Merrell, Poplar Bluff, for defendants-respondents Risby Pallet and Lumber Co.

HOGAN, Judge.

This is a Workers' Compensation case. The Administrative Law Judge concluded that the employee: 1) did not sustain a compensable accident within the meaning of § 287.020.2, RSMo 1986, nor 2) demonstrate the incidence of an occupational disease in October-November 1984, while he was employed by Risby. In a split decision, the Labor and Industrial Relations Commission affirmed the judgment of the A.L.J. The employee appeals. We reverse and remand.

A preliminary word about the posture of the cause on appeal is appropriate. We review the award of the Commission, not that of the Administrative Law Judge. *Swillum v. Empire Gas Transport, Inc.,* 698 S.W.2d 921, 923 (Mo.App.1985). All the same, subdivision one (1) of § 287.495, which defines the scope of our review on appeal from an award of the Labor and Industrial Relations Commission, is not materially different from former § 287.490.1, which defined the scope of our review prior to August 13, 1980. We continue to believe that when the Commission's ruling is based on an interpretation of law, we are not bound by the Commission's ruling. *Ikerman v. Koch,* 580 S.W.2d 273, 278[1] (Mo. banc 1979); *Merriman v. Ben Gutman Truck Service, Inc.,* 392 S.W.2d 292, 297 (Mo.1965). It is our view that the Commission has misinterpreted § 287.067.1, which defines the term "occupational disease," and for that reason the award must be reversed and remanded for hearing upon the questions which were not decided by the A.L.J. nor the Commission.

George Jackson, the employee, was hired by Risby Pallet and Lumber Company in August 1984. His job consisted of lifting 2 by 4's from a rotating conveyor table, then turning and stacking the boards on nearby pallets. The boards varied in length from 29 to 73 inches; a typical "armload" consisted of 4 boards 73 inches long. The weight of each bundle was about 45 pounds. Jackson repeated the movement of these bundles of boards, using his arms and wrists, for about 8 hours each working day.

After he had been working for several weeks, the employee began to experience pain and numbness in his fingers and

wrists. On October 3, 1984, he consulted Dr. Michael D. Laseter in Poplar Bluff. Tests denominated "nerve conduction velocity studies" indicated the employee was suffering from "bilateral carpal tunnel syndrome." [1] The employee was referred to Dr. E.T. Hansbrough, a physician who practices at Poplar Bluff. Dr. Hansbrough performed an operation called a bilateral nerve decompression. The employee has improved, but in May 1985, he still exhibited some symptoms of the carpal tunnel syndrome. There is some evidence the employee may have a degree of permanent partial disability.

Pursuant to 8 CSR 50–2.010(22), the A.L.J. determined that the claim presented five issues: 1) whether the employee sustained an accident or occupational disease; 2) notice; 3) disability, if any; 4) medical aid, and 5) causal relationship. Judge Ragland found against the employee on the first issue and made no ruling on the remaining four issues. The Commission simply affirmed the A.L.J.'s decision and entered a final award denying compensation. It will be necessary to discuss causation, but we do not undertake to decide that issue. In our opinion, the dispositive question is whether the employee acquired an occupational disease during his employment with Risby.

In his second point, the employee asserts that the Commission erred in ruling he did not contract an occupational disease nor sustain a compensable accident because its finding is not supported by substantial evidence "considered in light of [the] applicable law." This point, as developed in the "argument" part of the brief, questions the correctness of the Commission's finding that:

"The work [lifting boards from a conveyor and stacking them on a pallet] was common to pallet mills and lacked the special quality necessary to separate an incidence of occupational disease from the natural effects of manual labor."

We believe, on the facts presented, that the Commission has too narrowly defined the term "occupational disease." The controlling precedent is *Collins v. Neevel Luggage Manufacturing Company*, 481 S.W.2d 548 (Mo.App.1972).

Compensable occupational disease was first defined by statute in 1959, Laws of Mo.1959, S.B. 167, but the statutory definition was basically a reiteration or redaction, perhaps, of a judicial definition of the term. In *Marie v. Standard Steel Works*, 319 S.W.2d 871 (Mo. banc 1959), our Supreme Court defined occupational disease as:

"referring to a disease which is the natural incident or result of a particular employment and is peculiar to it, usually developing gradually from the effects of long continued work at the employment, and serving, because of its known relation to the employment, to attach to the employment a risk or hazard which distinguishes it from the ordinary run of occupations and is in excess of that attending employments in general."

*Id.* at 875–76[5].

The statutory definition of "occupational disease" runs thus:

"A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind upon consideration of all the circumstances a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workers would have been equally exposed outside of the employment. The disease must be incidental to the character of the business

---

**1.** This disorder has been described as " 'an inflammatory disorder in which the tendons in the wrist area which are bound down by ligaments in a band like fashion surrounding the wrists [become inflamed] due to excessive use especially

*that might be seen with factory type work where one movement, motion or job is done continuously....'"* (Emphasis ours.) *Segar v. Garan, Inc.*, 388 So.2d 164, 165 (Miss.1980).

and not independent of the relation of employer and employee."

Section 287.067.1.

We bear in mind that the Commission rested its decision to deny compensation for occupational disease upon the following grounds:

"The job performed by Mr. Jackson at Risby was not special, nor did lifting boards from a conveyor and stacking them on a pallet create an inherent risk of disease. The work was common to pallet mills and lacked the special quality necessary to separate an incidence of occupational disease from the natural effects of manual labor."

The Commission relied on *Collins v. Neevel Luggage Manufacturing Company*, 481 S.W.2d 548, but in our view it misconstrued the holding of that case. In *Collins*, after going over the evolution of the term "occupational disease," our colleagues at Kansas City held:

"We think it implicit in the decisions on occupational disease as judicially defined and explicit in the provisions of Section 287.067 ... that what is distinctively occupational in a particular employment *is the peculiar risk or hazard which inheres in the work conditions*, and a disease which follows as a natural result of exposure to such occupational risk, an exposure which is greater or different than affects the public generally, is an occupational disease, not an ordinary disease of life." (Our emphasis.)

*Id.* at 552.

But speaking to the special quality of the occupational risk, or "unusualness distinction," as Professor Larson chooses to describe the same quality,[2] the *Collins* court went on to say:

"Contrary to the view appellants' argument suggests, whether a disease is occupational is not to be determined by whether the disease is literally peculiar to an occupation, but whether there is 'a recognizable link between the disease and some distinctive feature of the claimant's job *which is common to all jobs of*

*that sort'.*" (Citations omitted.) (Emphasis in original.)

*Id.* at 554.

Finally, the court noted that:

"Disease resulting from the chronic traumata of repetitive occupational body movement has been held to come within [the coverage of the statute] by courts construing comparable statutes, and reasonably so."

*Id.* at 555.

■ So, the determinative inquiry here, as to the "special quality" of the employment, involves two considerations: 1) whether there was an exposure to the disease—carpal tunnel syndrome—which was greater than or different from that which affects the public generally, and 2) whether there was a recognizable link between the disease and some distinctive feature of the claimant's job which is common to all jobs of that sort.

■ While we do not propose to create our own expertise and then act on it, the disease which is called "carpal tunnel syndrome" has been defined in at least one jurisdiction as a chronic occupational disease. *See Segar v. Garan, Inc., supra,* n. 1. Moreover, the medical evidence was that the employee's condition originated in his employment. The physician who initially examined the employee stated it was his opinion "that the active use of the patient's hands and arms at work could have definitely precipitated his carpal tunnel syndrome." The surgeon who operated on the employee, Dr. Hansbrough, stated that:

"Mr. Jackson has a job during which he uses his wrists lifting heavy weights constantly. This is *characteristically the type of exercise and activity that causes carpal tunnel syndrome.... He has no systemic disease or any other condition that would cause this type of condition,* so it is therefore my belief that this is a work related injury." (Our emphasis.)

At the hearing, the employee was asked by the attorney for the employer and insurer "Is it your position that the repetitive

**2.** 1B Larson, Workmen's Compensation § 41.-33(c) (1987).

doing the same job over and over again hour after hour, day after day, is what caused your condition?" The employee answered: "Yes, sir." Counsel pursued the matter: "You're not saying that just one single incident of trauma, but it was doing the same thing over a period of hours and days and weeks that caused this; is that correct?" The employee answered: "I would say so, yes, sir."

So, the Commission had before it uncontradicted evidence that the employee was doing a job—lifting and twisting bundles of 2 by 4's—which exposed him to the development of carpal tunnel syndrome to a degree greater than and different from that which affects the public generally. Moreover, there was a recognizable link between the disease and a distinctive feature of the claimant's job which is common to all jobs of that sort. The Commission has interpreted the occupational disease statute too narrowly. The award is reversed; the claim is remanded to the Commission for hearing and resolution of the undetermined issues. It is so ordered.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.