Keith A. CHAMPION, Claimant–
Respondent,

v.

J.B. HUNT TRANSPORT, INC.,
Employer–Appellant.

No. 22803.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 21, 1999.

Jeffrey D. Slattery, Slattery & Rawson, P.C., Kansas City, for appellant.

James D. Sickal, Hawk & Associates, Osage Beach, for respondent.

Before PREWITT, J., GARRISON, C.J., and BARNEY, J.

PER CURIAM.

J.B. Hunt Transport, Inc. ("Employer") appeals from an award of the Labor and Industrial Relations Commission ("Commission") awarding Keith Champion ("Employee") benefits under the Workers' Compensation Law. Employer contends that the Commission erred in finding that an employer-employee relationship existed between it and Employee at the time of the accident in question based on the terms of their employment arrangement; that the Commission erred in finding, in the alternative, that Employee was a statutory employee; and that the Commission erred in finding that Employee was in-jured out of and in the course of his employment with Employer.

Employee went to work for Employer as a truck driver in March 1996. Thereafter, he went through a driver's training school, where he was instructed and tested on various policies, which he agreed to be bound by, including one on alcohol and controlled substance possession, use and testing. According to one portion of Employer's policy, an employee is not to drink for a minimum of eight hours before going on duty. Employee signed a form acknowledging that he understood this policy and agreed to be bound by it. According to Employer, a violation results in an automatic termination.

Employee was assigned to Employer's truck in Kansas City on April 18, 1997 (Friday) and drove to St. Roberts, Missouri where he parked the truck at a truck stop near his home. He proceeded to drink beer on Saturday, April 19, 1997, and from approximately noon until 5:00 to 6:00 P.M. on Sunday, April 20, 1997. After sleeping for 3½ hours, Employee went to the truck with two unopened beers at approximately 9:45 P.M. on April 20 and started his assigned trip which would have taken him to Alabama. After driving the truck approximately thirty miles he was involved in an accident with another tractor-trailer at 10:30 P.M. Subsequent testing revealed that his blood alcohol level was .17.

Employee filed a claim for workers' compensation benefits for injuries he received in the accident, and the Administrative Law Judge ("ALJ") held a temporary hardship hearing on the claim. Employer contended that under the policy, which Employee agreed to be bound by, Employee had been automatically terminated prior to the accident because of his use of alcohol. The ALJ held that Employee was not automatically terminated under Employer's policy, and even if the automatic termination was effective, Employee was a statutory employee at the time of the acci-

dent. Accordingly, the ALJ awarded Employee benefits, finding that Employee was an employee working within the course and scope of his employment at the time of the accident. Employer sought a review of these findings by the Commission, which affirmed. Employer appeals.

█ In reviewing a workers' compensation award, we review the findings of the Commission and not those of the ALJ. *Gordon v. Tri–State Motor Transit Co.*, 908 S.W.2d 849, 852 (Mo.App. S.D.1995). Where, as here, the Commission's award attached and incorporated the ALJ's award and decision, we consider the findings and conclusions of the Commission as including the ALJ's award. *Banks v. Springfield Park Care Center*, 981 S.W.2d 161, 163 (Mo.App. S.D.1998). If there is sufficient competent and substantial evidence to support the award, we then determine if the award is against the overwhelming weight of the evidence. *Davis v. Research Medical Center*, 903 S.W.2d 557, 571 (Mo.App. W.D.1995). We may not substitute our judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission. *Id.* The Commission's interpretation and application of the law, however, are not binding on this Court and fall within our realm of independent review and correction. *Id.*

█ Initially we note that the Commission's award is entitled "Temporary Or Partial Award," and it recites that it is pursuant to § 287.510.[1] While we have jurisdiction to review an award pursuant to § 287.495, which authorizes an appeal from the final award of the Commission, no appeal usually lies from a temporary or partial award. *Hillenburg v. Lester E. Cox Medical Center*, 879 S.W.2d 652, 655 (Mo.App. S.D.1994). An order is deemed "temporary or partial" "where it remains tentative, provisional, contingent, subject to recall, revision or consideration by the issuing agency." *Id.* Appellate review on the issue of *liability* in a workers' compen-

sation case, however, is permissible although an award is denominated "temporary or partial." *Cahall v. Cahall,* 963 S.W.2d 368, 371 (Mo.App. E.D.1998). In *Marrone v. Modine Heat and Transfer,* 918 S.W.2d 315, 318 (Mo.App. S.D.1996) we said "[i]t thus appears that all districts of this Court have now held that where Commission makes a temporary or partial award of workers' compensation benefits, the issue of liability is eligible for judicial review, but issues regarding amount, duration or other aspects of the award are not." Since the issue here is that of liability for any compensation benefits, we have jurisdiction and will review the issues presented.

As we construe Employer's first point on appeal, it posits error by the Commission in finding that an employer-employee relationship existed between it and Employee at the time of the accident in question. It contends that the "employment arrangement" with Employee provided for an "automatic and immediate ending of the employment relationship when [Employee] violated [Employer's] Substance Use/ Abuse Automatic Termination Policy by consuming beer within eight hours of taking possession of [Employer's] truck," and that the policy was "clear and unambiguous and establishe[d] the clear intent of the parties that the policy was self-acting and did not require intervention by [Employer]." Accordingly, Employer argues that the employment relationship was automatically terminated without the need for further action on its behalf with the result that there was no employer-employee relationship at the time of the accident.

█ Section 287.020 defines an "employee" in pertinent part as "every person in the service of any employer, ... under any contract of hire, expressed or implied, oral or written, or under any appointment or election, ... " Employment status is to be determined on the peculiar facts of each case. *Hutchison v. St. Louis Altenheim,*

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

858 S.W.2d 304, 305 (Mo.App. E.D.1993). The pivotal question in determining the existence of an employer-employee relationship is whether the employer had the right to control the means and manner of the service, as distinguished from controlling the ultimate results of the service. *Id.* A claimant establishes an employer-employee relationship under the Workers' Compensation Law if the claimant worked in the service of the alleged employer and the employer controlled those services. *Gaston v. J.H. Ware Trucking Inc.,* 849 S.W.2d 70, 72 (Mo.App. W.D.1993). Generally, in an employer-employee relationship, the employer reserves the right to control or actually controls the means and details associated with completing the job. *Id.* at 73.

The issue of the employment status of a person injured during the course and scope of employment is one of law, which may be corrected by this court. *Id.* The terms "out of" and "in the course of" employment are separate tests for compensability. *Page v. Green,* 686 S.W.2d 528, 532 (Mo.App. S.D.1985). An injury arises "out of" employment if it is a natural and reasonable incident of the employment and is the rational consequence of some hazard connected with the employment. *Id.* An injury is "in the course of" the employment when it occurs within the period of employment, at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment. *Id.* We are mindful that the Workers' Compensation Law is to be broadly and liberally interpreted, and is intended to extend its benefits to the largest possible class. *Gaston,* 849 S.W.2d at 74.

Employer relies on its policies, which Employee had agreed to be bound by, in contending that their relationship had automatically terminated, without the necessity of further notice, when Employee drank within eight hours prior to beginning the trip in question. That policy appears in several documents referred to by Employer. The following appears in a document entitled "Automatic Termination":

THE FOLLOWING VIOLATIONS WILL RESULT IN AUTOMATIC TERMINATION WITH NO REVIEW, REGARDLESS OF LENGTH OF SERVICE.

1. Drinking, DWI, D.U.I., including personal vehicle, use or possession of alcohol or drugs. This includes use/abuse of certain prescription and non-prescription drugs. No drinking (minimum of eight (8) hours) before going on duty and/or from the time a Driver leaves his home terminal. This rule applies even after returning to the home terminal if the Driver remains assigned to a tractor, is on company property, or is using a facility used to lodge company Drivers regardless of who pays for the lodging. *If a Driver is found to be in violation of this policy and is terminated while on the road, transportation to the Driver's home will be at the Driver's expense....*

Also included in the list of prohibitions are: unauthorized passengers; an act of dishonesty or theft from the company, a customer, or an employee of Employer; falsification of an application or any work, personnel, or other company records; having more than one active Driver's license; receipt of a reckless or careless driving citation; and failure to maintain "minimum Driver hiring qualifications."

Employer argues that this policy is clear and unambiguous with the result that it was self-enforcing without the necessity of an additional notice of termination and that, consequently, at the time of the accident, Employee was no longer acting within the course and scope of his employment. It cites no authority involving a similar employment arrangement, which required that result.

The "Automatic Termination" policy of Employer relating to the consumption of alcohol provides, in part, that "[i]f a Driver

is found to be in violation of this policy and is terminated while on the road, transportation to the Driver's home will be at the Driver's expense." This does not indicate that termination automatically occurs on a violation without further action by the Employer. If it did, there would be no reason to say that "if" a driver is terminated on the road after being found to be in violation of the policy. If the policy means what Employer says it means here, such a driver would already have been terminated without further action by Employer. Likewise, as pointed out by Employee, the policy, as interpreted by Employer, could lead to numerous unreasonable results. For instance, the policy prohibits, and based on Employer's argument would result in automatic termination for, unauthorized passengers, falsification of an application for work, having more than one driver's license, and the "failure to maintain minimum driver hiring qualifications." If a driver did carry an unauthorized passenger, which was not known until a year later when the driver was injured on the job, Employer could contend that he had been automatically terminated a year earlier, and thus was not injured in the course and scope of his employment, even though he had continued to perform services at its direction and continued to be paid after the alleged automatic termination. The same unreasonable results could occur with reference to the other provisions of the policy.

According to Employer, other evidence of its policy includes a "Driver's Manual Test" which consists of a multiple-choice test, apparently relating to the contents of Employer's driver's manual. The driver's manual is not in the record before us, but in one question on the test, the employee is asked to select which of four optional answers is correct in response to the statement "Automatic Termination Can Occur If The Driver Does Which Of the Following." The optional answers are: "drinking alcohol while on duty or available for dispatch," "abandoning the truck," "carrying an unauthorized passenger," or "any of the

above." The correct answer is apparently the last one ("any of the above"). Of significance, however, is the fact that the question refers to the fact that automatic termination "[c]an [o]ccur" as a result of any of those events, not that it "will" happen. This again underscores the fact that the "policy" referred to by Employer, and which it contends that Employee agreed to be bound by, does not provide for automatic termination without further action by the Employer.

In this regard, in *Olivio v. TLI, Inc.*, 731 S.W.2d 395, 397 (Mo.App. E.D.1987), the claimant was a truck driver who took an unauthorized passenger on a trip with him contrary to the employer's policy. He was injured during an altercation with the passenger. The court affirmed the Commission's award of benefits to the employee, saying in part, that an employee is not necessarily deprived of the right to compensation where his injury was received while performing an act specifically prohibited by the employer. It acknowledged that compensation is denied where the violation takes the employee from the sphere of his employment, but in that instance the employee was where he was supposed to be and doing what he was supposed to be doing when the injury occurred. *Id.* "The fact that he had violated a rule as to 'how' he should perform his job may provide grounds for dismissal, but neither removes his conduct from the sphere of employment nor precludes his recovery of workers' compensation benefits." *Id.*

We also note the general law on intoxication as a defense to a workers' compensation claim. It has been held that intoxication is a defense only if it is shown that the employee was intoxicated to such an extent that it was impossible for him to physically and mentally engage in his employment. *See Swillum v. Empire Gas Transp., Inc.*, 698 S.W.2d 921, 924–25 (Mo. App. S.D.1985). In *Gee v. Bell Pest Control*, 795 S.W.2d 532, 536–37 (Mo.App. W.D.1990), the court said that mere evi-

dence of a high blood alcohol content is insufficient to support a denial of a claim on the basis of intoxication, and to be denied compensation, a claimant must be intoxicated to the point where his mind is a "total blank."

In the instant case, the ALJ cited the *Swillum* and *Gee* cases for the above principal and found that Employee's .17 blood alcohol level alone did not disqualify him from compensation, and that there was no evidence that his mind was a "total blank" or that he was intoxicated to such an extent that it was impossible for him to physically or mentally engage in his designed employment. There is no suggestion here that that finding was erroneous.

It should be noted that in *Swillum* the court quoted from *Phillips v. Air Reduction Sales Co.*, 337 Mo. 587, 85 S.W.2d 551, 555 (Mo.1935), where the court acknowledged that there was nothing in the Compensation Act which forfeits the right to compensation upon a showing that an employee had been drinking, and it said that "[u]ntil the Legislature sees fit to do so, we cannot deny compensation because of intoxication, at least unless it was shown that the degree of intoxication was such that it could be held that the injury did not arise out of the employment because the employee could not have engaged in it." *Swillum*, 698 S.W.2d at 924. In Missouri, the legislature did act on this matter in 1990, amending § 287.120 by adding subsection 6(2). Section 287.120.6(2) provides:

(2) If, however, the use of alcohol or non-prescribed controlled drugs in violation of the employer's rule or policy which is posted and publicized as set forth in subdivision (1) is the proximate cause of the injury, then the benefits or compensation otherwise payable under this chapter for death or disability shall be forfeited. The forfeiture of benefits or compensation shall not apply when:

(a) The employer has actual knowledge of the employee's use of the alcohol or non-prescribed controlled drugs and in the face thereof fails to take any recuperative or disciplinary action; or

(b) As part of the employee's employment, he is authorized by the employer to use such alcohol or nonprescribed controlled drugs.

We need not and do not decide whether this statutory test rather than the previous test enunciated in cases such as *Swillum* and *Gee* is applicable to an issue of eligibility for compensation benefits in cases involving intoxication as Employer does not rely on this statutory provision. The ALJ noted the fact that Employer had not raised § 287.120.6(2) as a defense, and said the following:

The only evidence presented to the facts surrounding the accident itself was the claimant's testimony and a medical history contained in [Employee's doctor's] report. The accident report was not even admitted. Therefore there is insufficient evidence to determine if alcohol was the proximate cause of this motor vehicle accident. Even though this accident occurred very shortly after the claimant began driving at the end of a weekend of drinking, there is not enough evidence to determine what effect this drinking had on his ability to drive and the resulting accident. Consequently, I am unable to determine whether this section is applicable to this case . . .

There is no suggestion here that the finding that there was insufficient evidence to determine if alcohol was the proximate cause of the accident and Employee's injuries was an erroneous one. We are not persuaded that the Commission erred in its determination that Employee was acting within the course and scope of his employment at the time of the accident in question. Accordingly, the first point is denied.

In its second point, Employer contends that the Commission erred in finding that even if Employee was automatically terminated, he would still be a statutory employee covered under the Workers' Com-

pensation Law. This point is obviously premised on a determination that the Commission erred as submitted in Employer's first point. Since we did not so determine, this point is moot and is denied for that reason.

■ Employer's third point is premised on the contention that Employee's injuries did not arise out of and in the course of the employment because the accident occurred after his authorization to operate the truck ended as a result of his violation of its policy concerning the consumption of alcohol. It clarifies this point by explaining that under its policy, Employee was not authorized to drive the truck after drinking, and explains that this theory does not require consideration of § 287.120.6, and the relationship of the alcohol in causing the accident.

■ There are several reasons why Employer is entitled to no relief under this point. First, the authority it cites in support is an award denying compensation issued by the Commission in an unrelated case. It cites no authority holding that such a decision has precedential value here, and our own research has revealed none. It is the appellant's obligation to cite appropriate and available precedent. *Shiyr v. Pinckney*, 896 S.W.2d 69, 71 (Mo. App. S.D.1995). If no authority is available, an explanation should be made for its absence, and the failure to either cite relevant authority or explain its absence justi-fies a conclusion that the point is abandoned. *Id.* In this regard, we are again mindful of *Olivio*, 731 S.W.2d at 397, cited in our discussion of the first point on this appeal.

Additionally, it appears from Employer's argument under this point that it is premised on the alleged automatic termination of Employee's employment before the trip in question began. For instance, Employer argues that "[c]ompany policy is clear that his employment terminated and any authority he had ended with the possession and consumption of alcohol ..."; and "[t]he use of alcohol terminated the claimant's employment ... and any authority he previously had to operate a company vehicle ended over twenty-four hours before the vehicular collision." Based on our discussion in point one, we are unable to conclude that the Commission erred in failing to find that there was an automatic termination of the employment in this case. This point is denied.

Under the particular facts of this case and the issues presented here, the award under review is affirmed.[2]

---

2. Respondent's Motion for Sanctions for Filing Frivolous Appeal is denied.