Oscar NELSON, Claimant–Respondent,

v.

CONSOLIDATED HOUSING DEVELOPMENT AND MANAGEMENT COMPANY, INC., Employer–Appellant.

No. 15367.

Missouri Court of Appeals,
Southern District,
Division One.

May 16, 1988.

employer, appeals from a decision by the Missouri Labor and Industrial Relations Commission (Commission) affirming the award of an Administrative Law Judge in favor of claimant, Oscar Nelson (Nelson). We affirm.

On August 21, 1981, Nelson was injured in an on-the-job accident, and filed a claim for worker's compensation. The claim, after an unexplained delay, was heard by an Administrative Law Judge on April 22, 1986. After hearing evidence, the Administrative Law Judge made findings of fact and conclusions of law, and awarded Nelson 1) permanent partial disability benefits in the sum of $104.40 a week for 100 weeks, representing a permanent disability rating of 25 percent of the body as a whole; 2) temporary total disability benefits in the sum of $174.00 a week for a period of 19$\frac{1}{7}$ weeks;[1] 3) medical aid in the amount of $1,456.70, with a credit to the employer of $1,095 previously paid, and 4) 8 percent per annum interest from the date of the award until paid on any past due compensation.

Consolidated filed an application for review with the Commission, which affirmed the award of the Administrative Law Judge.

Consolidated appeals, contending that there was not sufficient substantial and competent evidence to support the permanent partial disability award, and that the evidence only supported an award of no more than 9 weeks' temporary total disability.

Relevant facts not in dispute are that Nelson sustained an accidental injury on August 21, 1981, which arose out of and in the course of his employment with Consolidated; that Consolidated received proper notice of the accident; that Nelson's claim for compensation was timely filed; and, that Consolidated had furnished medical aid to Nelson in the sum of $1,281.60, but had paid no temporary total disability benefits.

Lawrence H. Rost, New Madrid, for claimant-respondent.

Jeffrey S. Gavin, Poplar Bluff, for employer-appellant.

GREENE, Presiding Judge.

Consolidated Housing Development and Management Company, Inc. (Consolidated),

---

1. The award of $174.00 per week for temporary total benefits is shown by the Commission as covering two different lengths of time—19½ weeks and 19$\frac{1}{7}$ weeks. However, a total sum of $3,330.85 is shown as the gross amount Nelson is to receive as temporary total benefits. Therefore, 19$\frac{1}{7}$ weeks is apparently the Commission's intended length of time awarded to Nelson, not 19½ weeks.

Findings of fact made by the Administrative Law Judge, which the Commission found to be substantial and competent evidence to support the award, are as follows:

Sometime in 1977 or 1978, the Employee, Oscar Nelson, began working for Consolidated Housing Development [and] Management Company, a firm that owned and operated low-rent housing projects and facilities in New Madrid, Lilbourn, and Malden, Missouri. Originally, his duties for his Employer consisted of driving a tractor and spreading loads of dirt, but later, after the housing projects were completed, his duties evolved into general maintenance and repairs, e.g., mowing grass, cleaning, replacing windows, doorknobs, and the like.

Prior to his injury in 1981 at the Lilbourn Housing Project, the employee had no previous back injuries, (Dr. Thompson's narrative report of 2/21/83).

On Friday, August 21, 1981, Oscar Nelson was cutting weeds in a ditch located at the Employer's housing project in Lilbourn, Missouri, and was using a tool known as a Kizer Blade, weighing between four and six pounds. He used two hands to swing it, 'like [you're] holding a baseball bat', 'swinging it up over [your] head'. He had been cutting weeds about three or four hours that morning when he first experienced 'a sharp pain' in 'the upper part of my back', which recurred two or three times about thirty minutes apart. He continued to work until around 3:00 p.m., and that evening at home he experienced further pain in his right [sic] arm. The next morning, Saturday, 'it occurred again and knocked me to my knees and that's when they called the ambulance for me'. The pain was in the right shoulder 'because the nurses on [the] ambulance said they thought I had a stroke ...' Carlton Lewis 'picked me up and put me in the truck and called the ambulance.'

Oscar Nelson was thereupon taken to the Emergency Room at the Missouri Delta Community Hospital in Sikeston, Missouri, on August 22, 1981, where he was admitted for treatment of complaints of pain in his right shoulder and arm. He was given motrin, released, and told to rest (Emergency Room Report on 8–22–81).

Subsequently, on August 26, 1981, he returned to the same Emergency Room, complaining of more pain in the right shoulder and arm, and unable to turn his head to the right. He was given a soft collar to wear around his neck and his left arm was placed in a sling. (Emergency Room Report of 8–26–81).

Thereafter, Oscar Nelson was seen on August 28, 1981, by Dr. John C. Hackethorn, of Ferguson Medical Group, Sikeston, Missouri, whose impression it was that the employee had a radiculopathy from a cervical disc. He was tried on conservative therapy with heat and traction. (Hackethorn Report of 12–9–81.)

The employee was referred by Dr. Hackethorn to Dr. Robert C. Dunn, Jr., a neurological surgeon at the St. Louis University Medical Center in St. Louis, Missouri, on September 29, 1981, who could find no objective neurological deficits. Dr. Dunn continued the patient on conservative therapy. He returned to St. Louis on two other occasions to visit Dr. Dunn at the Medical Center.

Still complaining of pain in the right side of the neck, right arm, hand, leg, and in his lower back, the employee visited Dr. Thomas M. Thompson, a New Madrid chiropractic physician. Dr. Thompson's diagnosis was cervical strain and lumbar scoliosis (Dr. Thompson's report of 2–21–83). Oscar Nelson was treated by Dr. Thompson from November 24, 1981, to July 16, 1982, receiving thirty-five treatments consisting of spinal manipulation and physiotherapy. Results were mixed and at the conclusion of the treatments, Mr. Nelson's condition remained largely unchanged with the doctor concluding: 'He seems to have suffered injuries which may prove to be permanent.' (Dr. Thompson's report of 2–29–84). Dr. Thompson rated the employee at 25% of the man as a whole.

In the interim, the employee was requested by the Division of Vocational Rehabilitation to present himself to Dr.

David Y.S. Lee, of Neurologic Associates of Cape Girardeau, Inc. Accordingly, on January 9, 1982, Nelson, continuing to complain of back pain, was examined by Dr. Lee, who, acknowledging the patient's back pain with radiation down the right arm and right leg, stated that the neurologic examination suggests that the pain is 'probably of musculoskeletal origin.' (Dr. Lee's Report of 1–9–82).

Dr. Thompson returned the patient to light duty at the housing project on January 6, 1982, where he worked until he was terminated in August of 1982. At that time, he was still in pain, and to this date, he states he is 'still experiencing the same pain', 'can't even squat down and change the spare tire', when he gets up from watching television, 'it starts to hurt', and 'I just can't walk a block.'

. . . .

As to the employee's permanent partial disability, the medical records contain the following diagnosis and impressions:

(1) Dr. Sever, in the 8–26–81 Missouri Delta Community Hospital medical report, diagnosed Employee's condition as cervical nerve impingement. This diagnosis was made five days following the Friday injury, upon clinical examination of the patient. In Dr. Sever's judgment, the symptoms were severe enough to refer Nelson to Dr. John Hackethorn, an orthopedic surgeon.

(2) Dr. Hackethorn, upon seeing the patient for the first time on August 28, 1981, observed that the patient had pain in his right shoulder, running down into his right arm and hand, and the pain was accentuated with turning his head to the right side. The physician noted that Nelson had moderate paravertebral muscle spasm and that x-rays showed significant degenerative changes at C–5–6.

(3) Dr. Thompson, who treated the patient from November 24, 1981, through July 16, 1982, diagnosed Nelson's condition as cervical strain and lumbar scoliosis. He further confirmed that, per the patient's history, he had no previous comparable symptoms before August 21, 1981.

Employer submitted one medical report, rendered by Dr. R.A. Ritter, Jr., who saw Nelson on November 21, 1985, four years after the accident. Dr. Ritter did not treat the employee following the accident, but examined Nelson for the purpose of submitting a report on behalf of the employer. Dr. Ritter's report stated that the patient's symptoms, as of November, 1985, are related to degenerative arthritis, and he 'does not feel' that these degenerative changes would be related to the accident.

Based on these findings of fact, the Administrative Law Judge made the following rulings and conclusions of law:

*ISSUE (1) Temporary Total Disability:*

Based on all of the medical evidence and lay testimony, I find employee sustained temporary total disability from August 21, 1981, to January 6, 1982, which was a direct result of his accidental injury with employer on August 21, 1981, and precluded employee's ability to function in a competitive work market.

Since employer has not provided weekly benefits, I direct employer to pay employee weekly temporary total benefits of $174.00 per week for a period of nineteen-and-a-half [sic] weeks, representing a period commencing on August 22, 1981, through January 6, 1982.

*ISSUE (2) Permanent Partial Disability:*

Based on all the medical evidence and lay testimony, I find employee has sustained permanent partial disability as a direct result of his accidental injury on August 21, 1981.

Accordingly, I direct employer to pay to employee permanent partial benefits of $104.40 per week for a period of one hundred weeks, representing twenty-five percent of the body as a whole.

*ISSUE (3) Medical Aid:*

I further find, as a direct result of employee's accidental injury of August 21, 1981, employer is required by Section 287.140, RSMo to furnish medical aid to

cure and relieve employee from the effects of his [injury].

Considering all the medical evidence and the lay testimony produced at the hearing, I direct employer to pay to employee the sum of $1,456.70, representing unpaid medical aid incurred as a result of employee's accidental injury of August 21, 1981.

*ISSUE (4) Credit for Payment Made by Employer to Employee:*

Based on the lay testimony, I find employer has paid employee the sum of $1,095.00, on account of employee's accidental injury of August 21, 1981, and is entitled to credit in like amount.

Consolidated's first point relied on is that the award of 100 weeks of compensation for permanent partial disability (25 percent of the body as a whole) was not supported by substantial and competent evidence.

Our review is limited to questions of law and we must affirm the Commission's award unless we find that (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) facts found by the Commission do not support the award; or (4) there was insufficient evidence to warrant making the award. § 287.495.1

 The Commission's awards on disability claims are not solely dependent on medical evidence given by expert witnesses, but its findings are to be judged on the basis of the evidence as a whole. "[T]estimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence." *Ford v. Bi–State Development Agency*, 677 S.W.2d 899, 904 (Mo.App.1984). Evidence the Commission could have and did rely on is contained in the Administrative Law Judge's findings of fact, which are supported by the record. Such findings are substantial and competent evidence that Nelson suffered a permanent partial disability to the extent of 25

percent of his body as a whole because of the accident in question.

 Consolidated's additional argument concerning the permanent partial disability award that Nelson was, in reality, claiming a right to recover because of three separate injuries is not only at odds with the facts, but is raised here for the first time. Questions which might have been presented to the Commission to establish a defense, but were not, cannot be litigated on appeal. *Long v. City of Hannibal*, 670 S.W.2d 567, 570 (Mo.App.1984).

 Consolidated next argues that the evidence only justified an award of no more than 9 weeks for temporary total disability benefits. On this issue, Consolidated alleges that "[t]here is simply nothing in this record to suggest that claimants [sic] temporary total disability extended beyond September 29, 1981...."

This statement is contradicted by Dr. Thompson's report of December 30, 1981, in which he stated Nelson was unable to return to work, and by Nelson's statement that when he returned to work several months later, he was wearing a sling on his left arm, was only doing "light work," and was still experiencing pain. On January 9, 1982, three days after Nelson's return to work, Dr. Lee found Nelson was still experiencing "[b]ack pain with radiation down the right arm and right leg." All of this evidence, when considered together, constituted competent and substantial evidence to support the Commission's finding that Nelson sustained temporary total disability from August 21, 1981, to January 6, 1982.

 It is true that there was evidence in the record, including letters from Dr. Rader, Consolidated's expert who first saw Nelson four years after the accident, that would have supported findings adverse to Nelson and in favor of Consolidated. However, it is the law that we must disregard evidence which might support findings different from those found by the Commission, *Matthews v. Roadway Express, Inc.*, 660 S.W.2d 768, 769 (Mo.App.1983), and review the record in the light most favor-

able to the Commission's findings. *Tillman v. Wedge Mobile Serv. Station,* 565 S.W.2d 653, 657 (Mo.App.1978). We have done so, and have a firm belief that all phases of the award made by the Commission were supported by competent and sufficient evidence.

There being no other issue, the award and judgment are affirmed.

CROW, C.J., and HOLSTEIN, J., concur.