James WOODBURN, Claimant–
Respondent,

v.

MAY DISTRIBUTING CO., INC.,
Employer–Appellant.

No. 17179.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 12, 1991.

---

Carl S. Yendes, Lowther, Johnson, Joyner, Lowther, Cully & Housley, Springfield, for employer-appellant.

Raymond E. Whiteaker, Brent S. Bothwell, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for claimant-respondent.

PARRISH, Presiding Judge.

May Distributing Co., Inc., (employer) appeals from the Labor & Industrial Relations Commission's (the commission) finding of liability arising from a claim for compensation filed by James Woodburn (claimant). An administrative law judge found liability on the part of the employer. The commission reviewed and affirmed that finding pursuant to § 287.480.[1] This court affirms.

Claimant was employed as a delivery man. His duties included driving a truck to deliver beef carcasses to customers. He also assisted in unloading the beef carcasses he delivered.

The claim for compensation that is the basis for this appeal arose from injuries that were alleged to have occurred on October 3, 1988, and October 10, 1988. While making a delivery on October 3, claimant assisted a customer's employee in unloading the beef carcasses claimant had delivered. The employee used a forklift to move the carcasses from claimant's truck to a refrigerated room. Claimant walked along side the forklift and steadied the beef carcass that was being transported in order to prevent the carcass from sliding off of the forklift. After completing the delivery, claimant returned to his place of employment, cleaned up and drove to his residence—"about a 30–minute drive." As he was driving home, claimant experienced pain in his lower back. That evening claimant attended a birthday celebration with members of his family at a restaurant. He returned home at approximately 8:30 p.m. He testified, "We sat around and watched t.v., and we talked because some of them had come back to the house. We sat and watched t.v., and then I went to bed." Claimant stated that nothing unusual happened that evening. The next day he felt worse.

On October 4, when claimant got out of bed, he experienced pain in his lower back and buttocks. As he was driving to his place of employment, his "right leg went numb." Claimant was scheduled to make a delivery to Kansas City. He decided that he was unable to make that delivery. Claimant went to his place of employment. He called his manager and told the manager of the problem he was experiencing with his back, that he had numbness in his right leg, and that he needed to go to a hospital emergency room to have it checked. The manager inquired whether claimant could make the Kansas City delivery. Claimant told him that he could not.

Claimant went to the emergency room of a Springfield, Missouri, hospital. He saw a physician who prescribed pain medication and instructed claimant not to work for two days. Claimant returned to his residence.

---

1. References to statutes are to RSMo 1986.

He called his manager and reported the results of his visit to the hospital emergency room.

Claimant felt no better two days later. He returned to the hospital emergency room. The physician he saw prescribed a muscle relaxant and instructed claimant not to work for two additional days. Claimant took the written instructions he had received from his physician to his manager.

Claimant's manager instructed claimant to call Allen May, the owner of the company. Claimant called Mr. May. Claimant reported what had happened, and Mr. May instructed claimant to call him before returning to work.

On the following Monday, October 10, claimant returned to work. He had talked to Mr. May by telephone earlier that morning. Mr. May told claimant that the company was not going to pay for claimant's medical bills because Mr. May did not think his injuries occurred at work. Claimant testified that Mr. May told him "if I would have notified them, they would have referred me to a company doctor, and told me that if I ever missed another Tuesday, I would be out of a job."

Claimant then made another delivery to the same place where he had made the October 3 delivery. Claimant testified:

As usual, we off loaded the truck and then we were—that day there was just three of us. There was—one of the guys that was there was—he was injured—I can't remember who he was, but he was just holding the hooks, not helping with the beef. He was just holding the hooks for us to put the beef on, because the order had got messed around, and the hind quarters weren't with the front quarters, we had to jostle back and forth between the rows to get the right sides together.

And was down to about the last two pieces or so on the last pallet, and the board broke under my foot as I was going to pick up the piece of meat off the pallet. It was a front quarter. And I dropped the meat back down on the pal-let. I repositioned my foot, and I continued to do my job.

Claimant was asked the following questions and gave the following answers:

Q. Did you feel any pain at the time your foot went through the pallet?

A. Yes.

Q. Where did you feel the pain?

A. At the knee and back, but it wasn't, you know, a bad pain. It was just like maybe I pulled something and a few days it would be better.

Claimant returned to the employer's place of business and reported the incident to his manager. Claimant cleaned up and went home. He continued to experience pain in his back that evening. He returned to work the next morning, October 11, and proceeded to drive to Kansas City and make deliveries. On his way to Kansas City, the truck claimant was operating developed mechanical problems in the refrigeration unit. At the first delivery stop for the day, claimant had called his manager. At that time he told the manager that his back "was getting worse."

After claimant returned to his home that evening, he continued experiencing pain. He called his manager and asked "for the name of the company doctor or the facility." The manager told claimant to call Mr. May. Mr. May told claimant that he didn't care what doctor claimant went to, "he wasn't going to pay for the bill."

Claimant called the hospital where he had gone to the emergency room previously and obtained a list of the names of three doctors. He then consulted Dr. Rogers. He was given medication, advised to schedule physical therapy, and told not to work for four weeks. Claimant advised his manager of the instructions he had received. He continued to receive medical treatment and in January of the following year was advised that he needed surgery.

Following the filing of a claim for compensation (and an amended claim), a hearing was held before an administrative law judge. The employer denied liability. The administrative law judge entered an award for claimant against the employer. The award was denominated "Temporary or

Partial Award" finding temporary total disability and the need for further medical care. The claim was submitted to the commission for review "as provided by Section 287.480 Revised Statutes of Missouri." The commission affirmed and adopted the award of the administrative law judge "for all purposes."

■ The employer filed a timely notice of appeal pursuant to § 287.495. Claimant filed a motion to dismiss the appeal contending that this court does not have jurisdiction for appellate review "because the decision appealed from is not a final judgment." Claimant suggests that the award was a "temporary or partial" award made pursuant to § 287.510 and "[t]here is no authority for judicial review of a temporary or partial award made pursuant to RSMo. Section 287.510." The motion to dismiss was ordered to be taken with the case for determination.

The employer contends that the commission's award, although denominated as a "Temporary or Partial Award," is a final determination of whether the employer has liability for payment of compensation benefits and, for that reason, is appealable. Claimant argues that the award was a temporary award and there is no statutory authority for appellate review of a temporary award.

This court's appellate jurisdiction is established by Mo. Const. art. V, § 18, that provides, as is applicable here:

All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; ....

The statute applicable to appellate review of workers' compensation awards is § 287.-495. It states, in pertinent part:

1. The final award of the commission shall be conclusive and binding unless either party to the dispute shall, within thirty days from the date of the final award, appeal the award to the appellate court having jurisdiction in the area in which the accident occurred....

2. The provisions of this section shall apply to all disputes based on claims arising on or after the August 13, 1980.

This court has previously found that it had jurisdiction to review awards denominated by the commission as "temporary or partial award," but which involved single issues that had been submitted and accepted by the commission for review in accordance with § 287.480 (and its predecessor statute). The issues were critical to each case's final resolution and were binding on parties who were otherwise without timely appellate recourse. Under those circumstances appellate review was permitted by means of the procedure provided in § 287.-495 (or § 287.490 for claims that arose before August 13, 1980). *See Smith v. Ozark Lead Co.*, 741 S.W.2d 802 (Mo.App. 1987), for a discussion of this issue at pages 805–07.

The commission has likewise recognized the appropriateness of expediting appeals of the crucial issue of liability in cases that must otherwise remain open to permit payments of compensation over relatively long terms. In 1975 the commission issued its regulation providing for review of issues of liability in cases in which the award was denominated "temporary or partial." In Mo.Code Regs. tit. 8, § 20–3.040 (1975), the commission provided for prompt appeals, on issues of liability, from orders of administrative law judges as follows:

(1) Whenever an administrative law judge issues a temporary or partial award, under § 287.510, RSMo, the same shall not be considered to be a final award from which an application for review may be made. The time for making an application for review shall not commence until a final award is issued by the administrative law judge in cases where a temporary or partial award has been issued.

(2) A party who feels aggrieved by the issuance of a temporary or partial award by any administrative law judge may petition the commission to review the evidence *upon the ground that the applicant is not liable for the payment of any compensation and especially set-*

*ting forth the grounds for the basis of such contention and where the evidence fails to support findings of the administrative law judge as to liability for the payment of compensation.* The commission will not consider application or petitions for the review of temporary or partial awards where the only contention is as to the extent or duration of the disability of the employee for the reason that the administrative law judge has not made a final award in determination of the extent or duration of disability. (Emphasis added.)

The same issue that is presented by claimant's motion to dismiss was considered by this court in *Scott v. Edwards Trans. Co.,* Nos. 16543 and 16544, 1990 WL 80015 (June 13, 1990). In *Scott,* this court determined that it had jurisdiction to review a decision of the commission that was based on an appeal permitted by Mo.Code Regs. tit. 8, § 20–3.040(2) (1975), quoted above. In a footnote at page 2 of the slip opinion, this court stated:

The Commission's award is denominated "Temporary or Partial Award." § 287.510, RSMo 1986, permits a temporary or partial award to be made subject to modification, from time to time, as may be necessary to meet the needs of the case. That statute permits a temporary or partial award to be kept open until a final award can be made. Although an award is denominated "temporary or partial," appellate review is not foreclosed in every instance. [Citing Smith v. Ozark Lead Co.]. The Commission accepted for review the workers' compensation claims now before this court pursuant to § 287.480, RSMo 1986. The appeal of Johnston is based upon the assertion by Johnston that he is not liable for payment of compensation. As noted in *Smith, supra,* at 806–07, appellate review on the issue of liability is permissible although an award is denominated "temporary or partial." Mo.Code Regs. tit. 8, § 20–3.040 (1975). The appeal of claimant as to the denial of his

claim against Edwards is, in fact, the appeal of a final determination and for that reason is properly before this court for review. § 287.495, RSMo 1986.

The Supreme Court of Missouri granted transfer in *Scott v. Edwards Trans. Co.* after opinion [2] by this court as provided by Rule 83.03. *See Scott v. Edwards Trans. Co.,* 807 S.W.2d 75 (Mo. banc 1991). Mindful that "[r]egardless of whether the parties raise the issue, an appellate court must determine whether the judgment or order appealed from is final," *Estate of Sawade v. State,* 787 S.W.2d 286, 288 (Mo. banc 1990), this court concludes that the fact that the supreme court entertained the appeal in *Scott* constitutes a determination that the commission's award was "final" for purposes of appellate review. The same procedure was followed in this case as was followed in *Scott* in seeking appellate review. This appeal is, therefore, properly before this court for review. Claimant's motion to dismiss the appeal is denied.

■ The employer's second point on appeal alleges that the award made by the commission is not supported by sufficient and competent evidence upon the whole record. The employer contends that claimant did not show that he "sustained a compenible [sic] accident in the course of his employment which caused his disabling condition." The employer also argues that claimant's evidence failed to establish by any "degree of reasonable probability" that the alleged accident was "the cause of his disabling condition."

The employer's brief goes to considerable length to identify discrepancies in statements contained in the original Claim for Compensation filed by claimant and claimant's testimony before the administrative law judge and complains that the discomfort and symptoms that arose following the October 3 event, "although sufficient to prevent [claimant] from working for the Employer for the rest of that week, were

2. The slip opinion of this court in *Scott* is not published in that it was not determinative. The determination of the Supreme Court of Missouri following transfer from this court was "the same as on original appeal." Rule 83.09.

not sufficient to prevent him from having a late evening out with his family following his full day at work." The employer suggests that since claimant presented no witnesses, other than his own testimony, regarding his activities during the evening of October 3, "it is reasonable to infer that their testimony would not have supported the presence of any apparent physical problems in the [claimant] that evening." The employer further suggests that claimant's symptoms were consistent with "prior episodes of back pain, which were caused by a pre-existing condition, and not by his job duties." It contends that there are other inconsistencies in claimant's testimony when compared to descriptions of the accident reported to the treating physician.

The findings of the administrative law judge that were adopted by the commission and included as part of its award state that the evidence presented at the hearing did not involve conflicting testimony. The administrative law judge stated, "[I]t is my opinion that based on employee's demeanor at the trial, and my opinion as to his credibility, which is above average, I find this issue in favor of the employee." He continued:

> Since I have accepted employee's version as to how the injury occurred, it is a mere formality to make a finding that the injury arose in the course of his employment. The employee was present at a place, where he was supposed to be, at a time where he was supposed to be, performing duties he was supposed to be performing, and therefore this issue is found in favor of the employee.

In adopting the findings of the administrative law judge, the commission found that a compensable injury occurred and that the injury was the result of an accident that arose in the course of claimant's employment.

■ For purposes of appellate review of the commission's award, evidence that might support findings different from those of the commission is disregarded. *Nelson v. Consolidated Housing Dev. & Mgmt.*, 750 S.W.2d 144, 148 (Mo.App.1988). The record is reviewed in the light most favorable to the findings of the commission. *Id.* at 148–49. Having reviewed the testimony as set forth in the transcript of the evidentiary hearing, this court concludes that the commission's finding that there was a compensable injury as a result of an accident that occurred in the course of claimant's employment is supported by competent and sufficient evidence.

The same is true regarding the employer's claim that the record on appeal "contains no medical evidence causally linking the [claimant's] present condition to the alleged accidents, as opposed to any of the other possibilities suggested by the evidence." The commission's award, again in the language of the administrative law judge whose report was adopted as part of the commission's award, states:

> Dr. Rogers' records do not specifically address this issue [medical causation], but it is my opinion that his statement contained in the October 12th, 1988 office records support a finding in favor of the employee. Dr. Rogers accepted the employee's history as to the details of the accident, i.e., lifting in a repetitive fashion and having his foot go through a pallet. Since I found employee's testimony credible in regard to the above statements, it is my opinion that this is sufficient evidence on which to base a finding that there is a relationship between the incident in question and employee's injury, i.e., injured while lifting and reinjured when foot went through a pallet, and therefore this issue is found in favor of the employee.

This court finds that the record before the commission is sufficient to support the determination that the injuries sustained by claimant were the result of the accidents that occurred on October 3 and October 10, 1988. The examining physician, by entry in claimant's medical records dated October 12, 1988, stated that claimant was first injured while lifting an approximately 125–lb. weight off the floor and reinjured "primarily when he put his foot through a pallet and fell, twisting his back." The statements contained in the treating physician's records, together with the accident

reports, provide sufficient evidence to support the finding that claimant's accidents at work caused his back injury. The award of the commission is affirmed.

FLANIGAN, C.J., and SHRUM, J., concur.