Frank J. MARRONE, Respondent,

v.

**MODINE HEAT AND TRANSFER, Appellant.**

No. 20485.

Missouri Court of Appeals, Southern District, Division Two.

March 18, 1996.

---

3. The lawyer who filed the "Post–Trial Memorandum" for Director is not the lawyer representing Director in this appeal.

Susan M. Turner, Jefferson City, for appellant.

D. Scott Forrester, Sunrise Beach, for respondent.

CROW, Judge.

Appellant, Modine Heat and Transfer,[1] appeals from a "Temporary or Partial Award" issued by the Labor and Industrial Relations Commission ("Commission") granting compensation for temporary total disability un-

---

1. This entity's name also appears in the record as "Modine Heat Transfer, Inc.," "Modine Heat Transfer," and "Modine Heat & Transfer."

der The Workers' Compensation Law, chapter 287, RSMo 1994, to Respondent, Frank J. Marrone. Commission made the award by adopting, unchanged, a "Temporary or Partial Award" entered by an Administrative Law Judge ("ALJ") of the Division of Workers' Compensation.[2]

Appellant presents one point relied on; it appears twice in Appellant's brief. The first version is not identical to the second. The first reads:

"The Commission erred in affirming the temporary award of the Administrative Law Judge finding Appellant responsible for providing medical treatment and benefits to Respondent for an infection in his left hand accident arising out of and in the course of his employment in that it is the employee's burden to prove an accident occurred and resulted in injury and only when an employer has notice an employee needs treatment or demand is made of the employer to furnish medical treatment and he neglects to provide needed treatment, will the employer be held liable for medical treatment for the Respondent and there is no credible evidence Respondent sustained an injury to his left hand on September 9, 1994, while employed by Appellant, that he gave Appellant notice of an injury to his left hand or that he requested Appellant provide treatment for such an injury."

Whether a "temporary or partial" award of workers' compensation benefits by Commission is appealable is a question with which Missouri courts have struggled on several occasions. A review of the cases as of November 17, 1987, appears in *Smith v. Ozark Lead Co.*, 741 S.W.2d 802, 806–10 (Mo.App. S.D.1987).

In *Smith*, a worker was permanently and totally disabled by an accident in 1976. *Id.* at 803–04. In 1986, based primarily on a stipulation by the parties, Commission made a "Temporary or Partial Award." The award included compensation for permanent and total disability, past medical treatment and nursing care, five years of future nursing care, and even a sum to resolve an issue regarding a possible penalty for an alleged "unguarded machinery violation." *Id.* Inasmuch as the claimant would require medical and nursing care the rest of his life, the cost of which was impossible to predict at the time of the award, Commission ordered that the case "be reset for further order" four years hence. *Id.* at 804. *See:* § 287.200, RSMo Cum.Supp.1975. Inferably, that was Commission's reason for denominating the award "temporary or partial."

This Court in *Smith* found the award disposed of the entire controversy between the parties as of the date of the award. *Id.* at 810. Mindful that it was well settled that there is no statutory authority for judicial review of a temporary or partial award made pursuant to § 287.510, RSMo 1978, *id.* at 806, this Court determined the award was not made under that section. *Id.* at 807. This Court held the award appealable per § 287.490.1, RSMo Cum.Supp.1984, *id.* at 810, and affirmed it. *Id.* at 813.

Four years after *Smith*, the Supreme Court of Missouri had to decide whether a "Temporary or Partial Award" was appealable in *Abrams v. Ohio Pacific Express*, 819 S.W.2d 338 (Mo. banc 1991). Citing § 287.495, RSMo 1986, the Supreme Court declared that only a "final award" is appealable. *Id.* at 343. However, citing *Smith*, the Supreme Court said in *Abrams:* "[A]n award of permanent total disability requiring payments for the remainder of the claimant's lifetime pursuant to § 287.200.2 is a final award for purposes of appeal under § 287.495 even though designated as a temporary or partial award." *Id.* at [8].

Inasmuch as the award in *Abrams* resolved all issues except whether future medical aid would be required and whether the claimant might be restored to regular work, *id.* at 339, the Supreme Court held the award appealable. *Id.* at 343.

---

**2.** Commission adopted the ALJ's award by a two-to-one vote. As explained more fully *infra,* the award finds Respondent injured both hands in the course of his employment. The dissenting Commission member had "no problem" with the finding that Respondent injured his right hand on the job. However, the dissenter found no evidence in the record establishing that Respondent met his burden of proving that the alleged injury to his left hand arose out of and in the course of employment.

Two months before *Abrams* was decided, this Court, citing *Smith*, held that a "Temporary or Partial Award" finding a claimant temporarily totally disabled and in need of further medical care is appealable even though made under § 287.510, RSMo 1986. *Woodburn v. May Distributing Co., Inc.*, 815 S.W.2d 477, 480–81[1] (Mo.App.S.D.1991). However, said *Woodburn*, appellate review is limited to the issue of whether the employer is liable for payment of any compensation. *Id.* Issues regarding extent or duration of disability are not reviewable because there is no final award resolving such issues. *Id.*

In 1994, this Court again addressed the appealability of a "Temporary or Partial Award." *Hillenburg v. Lester E. Cox Medical Center*, 879 S.W.2d 652 (Mo.App.S.D. 1994). There, the employer was ordered to pay workers' compensation benefits for past and future temporary total disability, together with past and future medical expenses. *Id.* at 653–54. On appeal, the employer maintained the employee was entitled to no benefits whatever. *Id.* at 654. This Court denied that argument. *Id.* at 655.

The employer in *Hillenburg* presented two other contentions, described by this Court thus:

"[In Point II], Employer contends that the portion of the award ordering the payment of past medical expenses was error because they were for health care providers chosen by Employee in violation of Employer's right under § 287.140 to provide such care with health care providers of its choosing. [In Point III], Employer challenges that portion of the award determining that Employee is entitled to past temporary total disability benefits in a specific sum as well as future temporary total disability benefits at a date to be determined." *Id.*

This Court, noting that the award in *Hillenburg* was made under § 287.510, RSMo 1986, *id.* at 656, pointed out that the Supreme Court of Missouri in *Abrams*, 819 S.W.2d 338, did not overrule cases holding that temporary or partial awards under § 287.510 are unappealable. *Hillenburg*, 879

S.W.2d at 656. Therefore, said this Court in *Hillenburg*:

"Accordingly, we have no appellate jurisdiction as to Employer's Points II and III and the appeal as to those points is dismissed." *Id.* at 656.

In *Smith v. Fabricated Metal Products*, 883 S.W.2d 537, 538[1] n. 3 (Mo.App.E.D. 1994), the Eastern District of this Court cited *Woodburn*, 815 S.W.2d 477, with approval in holding that a "temporary or partial" award is final and reviewable as to issues of liability, but not as to issues of the extent or duration of the award. That holding was cited with approval by the Western District of this Court in *Stufflebean v. Crete Carrier Corp.*, 895 S.W.2d 115, 116 (Mo.App.W.D.1995), which held that appellate review on the issue of liability in a workers' compensation case is permissible although an award is denominated "temporary or partial." As additional authority for that proposition, *Stufflebean* cited *Woodburn*. *Stufflebean*, 895 S.W.2d at 116[2].

 It thus appears that all districts of this Court have now held that where Commission makes a temporary or partial award of workers' compensation benefits, the issue of liability is eligible for judicial review, but issues regarding amount, duration or other aspects of the award are not. Although that goes beyond the Supreme Court's holding in *Abrams*, 819 S.W.2d 338, we note the Supreme Court denied applications for transfer in *Hillenburg*, 879 S.W.2d 652, and *Stufflebean*, 895 S.W.2d 115.[3]

 Hoping our analysis of the cases discussed above has led us to a correct understanding of the current state of the law on appealability of temporary or partial awards of workers' compensation benefits, we now examine the award in the instant case to see whether it qualifies as appealable.

As reported in the first paragraph of this opinion, Commission adopted, in toto, the ALJ's award. One of the findings in that award is that Respondent injured both hands September 9, 1994, in an accident arising out of and in the course of his employment with Appellant. The only compensation granted

3. No application for transfer was made in *Wood-* *burn*, 815 S.W.2d 477, or *Smith*, 883 S.W.2d 537.

in the award is $6,999.92 for 34 weeks of temporary total disability beginning September 9, 1994. The award grants nothing for medical treatment because, according to the award, Respondent presented insufficient evidence on the subject.

Appellant does not—at least in this appeal—dispute Respondent's claim that his right hand was injured September 9, 1994, in the course of his employment. It is evident from Appellant's point relied on, quoted *supra*, that Appellant attacks the award only as to the finding of injury to Respondent's left hand. Thus, this is not a case where the employer contends it has no liability for any injury sustained by the employee. Appellant tacitly concedes liability for whatever workers' compensation benefits—if any—Respondent is entitled to for the right hand injury.

Accordingly, we must decide whether Appellant can obtain judicial review of a temporary or partial award where Respondent's claim is based on simultaneous injuries to both hands, and Appellant insists it is not liable for the injury to one.

In pondering that question, we note the award says:

"I find that claimant is temporarily totally disabled at this time due to his injury to his left wrist. Therefore, claimant is entitled to temporary total disability benefits...."

As we understand the award, it attributes none of the temporary total disability to the condition of Respondent's right hand. Consequently, all of Appellant's liability for temporary total disability benefits—the only sum granted in the award—is based on the alleged left hand injury.[4] That being so, we shall treat the instant appeal as one presenting the question of liability only, with no issue regarding the amount of compensation granted Respondent in the award. Treated that way, we consider the award appealable under the authorities discussed *supra*.

That brings us to the task of identifying the guidelines governing our review, a subject exhaustively explored last year by the Western District of this Court in *Davis v.*

*Research Medical Center*, 903 S.W.2d 557 (Mo.App.W.D.1995).

▮▮▮ In *Davis*, an ALJ denied an employee's claim for workers' compensation benefits. *Id.* at 560. On the employee's application for review, Commission reversed the ALJ and granted benefits. *Id.* On appeal by the employer, the court set forth this standard:

"The reviewing court may not substitute its judgment on the evidence for that of the Commission. The weight of the evidence and the credibility of witnesses are ultimately for the Commission. The court applies a two-step process designed to determine whether the Commission could have reasonably made its findings and award upon consideration of all the evidence before it. In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commissions's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence. In doing so, it takes into consideration the credibility determinations of the Commission and, if those determinations as to witnesses who gave live testimony before the ALJ are different than those made by the ALJ, it also considers the ALJ's credibility findings as well as the reasons, if any are given, why the Commission differed with those findings."

*Id.* at 571.

▮▮▮ We do not face the same task that confronted the Western District in *Davis*.

4. As shall appear *infra,* the alleged injury to Respondent's left hand appears to have affected the wrist more than the hand. However, that is immaterial in this appeal.

There, Commission's determinations of witness credibility differed from those of the ALJ. Here, the ALJ's award (which contains a meticulous review of the evidence) resolves credibility issues in Respondent's favor. Commission adopted the ALJ's award in its entirety, thereby embracing the ALJ's credibility determinations. Consequently, the conflict in credibility determinations between an ALJ and Commission that existed in *Davis* is not present here.

We have carefully studied the 26 pages of argument in Appellant's brief. We find no complaint by Appellant that the ALJ misstated the evidence or overlooked any evidence favorable to Appellant. Instead, Appellant's position is:

"The ALJ's award was based on her findings [sic] Respondent was a credible witness and the events occurred as he testified to them. She did not find the testimony of Appellant's six witnesses credible because of many inconsistencies and contradictions when comparing their versions. The weight of the evidence, however, is to the contrary."

In support of its weight-of-the-evidence argument, Appellant cites the following passage from *Eimer v. Board of Police Commissioners of Kansas City*, 895 S.W.2d 117, 123[13, 14] (Mo.App.W.D.1995):

"[I]f a claimant relies on his own testimony alone to prove a material issue and his testimony is so contradictory and conflicting that it lacks probative force and is self-destructive and there is no other fact or circumstance tending to show which version is true, claimant has not made a case. In sum, the contradictory testimony of a single witness relied on to prove a fact does not constitute substantial evidence and is not probative of that fact." (Citation omitted.)

Appellant's hypothesis, as we grasp it, is that Respondent's testimony is the sole evidentiary support for the award. Appellant maintains Respondent's testimony is so conflicting that it lacks probative force and is self-destructive, thereby leaving the award unsupported by substantial evidence or, if not totally unsupported, at least contrary to the overwhelming weight of the evidence.

Appellant's contention obviously requires a review of the evidence. We cannot write a clearer account of it than the carefully drafted narrative in the ALJ's findings of fact. Therefore, we attach a copy of those findings to this opinion as Appendix A.

Based on those findings, the ALJ arrived at the following conclusions of law, among others:

"I find that claimant did sustain an accident on September 9, 1994, in which he struck both his right and left hands on the machinery.

I find the claimant to be a credible witness. I find that claimant gave the employer proper notice of his injury to his left hand when he informed employer on September 12, 1994, that his left hand was symptomatic.

I find that the accident arose out of the course and scope of employment as claimant was performing his duties for the employer when he was attempting to loosen the nut on the machinery and struck his left hand when it suddenly loosened.

After carefully reviewing all of the evidence presented I find that the blow to claimant's left hand that occurred when the nut suddenly loosened caused the injury to his left hand for which benefits are being claimed. Dr. Heim's opinion is credible that this blow caused a probable infection. Dr. Seagrave did not contradict that this was a possible diagnosis."

As Respondent points out, his testimony was not the sole basis for the award. As noted in the ALJ's findings of fact, Dr. Heim believed the condition of Respondent's left wrist resulted from a blow at work September 9, 1994, and is work related. Furthermore, Jerry Rogers, Appellant's witness, testified favorably to Respondent on the issue of whether Respondent notified Appellant he would not be at work September 12, 1994.

Appellant insists Respondent has given inconsistent accounts regarding the alleged left hand injury. However, the alleged inconsistencies pertain to details such as which exact spot on the hand struck which part of the machine. Respondent has never wavered in

avouching his left hand was injured simultaneously with his right.

Appellant also cites instances where Respondent's testimony is contradicted by medical records and testimony of other witnesses. However, such conflicts do not render Respondent's testimony self-contradictory. Such conflicts present credibility issues to be resolved by the fact finder.

The ALJ, who saw and heard the witnesses,[5] found Respondent's evidence credible. So did two of the three Commission members.[6] Thus, three of the four officials charged with assessing credibility found for Respondent.

Having carefully reviewed the record, we hold the award is supported by competent and substantial evidence. Additionally, having considered the credibility determinations of the ALJ and Commission, we hold the award is not against the overwhelming weight of the evidence. Finally, we hold an item-by-item discussion of each instance of alleged inconsistency or conflict in the evidence enumerated by Appellant would have no precedential value.

Although ostensibly based on the premise that Respondent's testimony is so self-contradictory that it lacks probative force, Appellant's assignment of error is in actuality a thinly disguised invitation to us to substitute our assessment of credibility for that of Commission. We respectfully decline. As explained in *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525, 527[1] (Mo. banc 1993), a reviewing court defers to Commission on issues involving credibility of witnesses and the weight to be given their testimony.

Finding no error of law, we deny Appellant's point relied on in compliance with Rule 84.16(b)(4) and (5), Missouri Rules of Civil Procedure (1996).

Commission's award is affirmed.

SHRUM, C.J., and PARRISH, J., concur.

5. The medical evidence was presented by depositions and medical records. No medical witness testified in person.

6. Footnote 2, *supra*.

## Appendix A

### FINDINGS OF FACT:

On Friday, September 9, 1994, claimant was employed by employer. He worked on a large machine putting rings on tubes. About 8:30 a.m. he was trying to adjust the machine and was attempting to break loose some nuts. He had a wrench in each hand and was turning them in opposite directions when the nut suddenly came loose causing his hands to move quickly and hit the machine. He hit the bottom of his left hand and felt an immediate shock of pain and then it stopped bothering him. He hit the thumb on his right hand and injured it.

Claimant testified that his immediate concern was with his right hand because he thought he had mashed his thumb. He was not concerned with his left hand because it stopped hurting.

Claimant immediately reported the incident to his manager. He was taken to the plant manager, Jerry Rogers. He was then sent to the personnel office where Bill Ernest, the personnel manager, gave him an ice pack and sent him back to work. After claimant went back to work his right hand continued to swell and hurt. About 10:30 a.m. claimant returned to the personnel office. He filled out an accident report and was sent to Dr. Leonard Christopher Franklin. Claimant did not tell anyone at the employer about his left hand at that time because it was not hurting him and he did not believe his left hand was injured.

Claimant saw Dr. Franklin at 11:45 p.m.–12:00 p.m. He told Dr. Franklin how he had mashed his right thumb when the nut came loose and told him he hit his left hand also. Claimant testified that Dr. Franklin briefly looked at his left hand and focused his attention on his right thumb. Dr. Franklin diagnosed him with an injured thumb, specifically the tendon. He put the thumb in a splint and wrapped claimant's wrist. He also prescribed pain and anti-inflammatory medication. Claimant testified that Dr. Franklin instructed him to not take the medication

until he got home because he should not operate machinery while taking it. Claimant was released to return to work with the restriction not to use his right hand in any duties. Claimant stated that Dr. Franklin told him that if he were his patient, he would send him home for a few days but because he worked for Modine their policy was they wanted people back to work unless they were dying. Dr. Franklin denied making this statement in his deposition.

Claimant returned to work about 1:00–1:30 p.m. He saw Connie Guffey in the personnel office. Claimant was given a choice of working light duty or going home without pay. Claimant chose the light duty and was assigned the task of adjusting the depth of rings by hand. His left hand and wrist was in an awkward position while performing this work but he had no discomfort in his left hand or wrist. Claimant went home about 3:30 p.m.

Saturday, September 10, 1994, claimant woke up late in the morning. At that time his left hand was swollen. He tried to get treatment at a Lake Convenience Clinic but they would be closing before he could get there. They told him he could come in on Monday and see Dr. Thomas Garrett. He also called the Lake of the Ozarks General Hospital and spoke to an emergency room nurse. He did not go to the emergency room that day.

On Monday, September 12, 1994, claimant called into work before his shift was to start and reported to one of the night managers that he was still having problems and that he was going to the doctor. Claimant was not instructed to go to a doctor by the night manager. Claimant went to Dr. Garrett later that morning. He told the doctor that he had struck his left hand. Dr. Garrett did not take notes. In Dr. Garrett's records he states that claimant was complaining of arthritis and tendonitis to his left wrist. This record was made on February 21, 1995. Dr. Garrett gave the claimant an injection and medication. He gave claimant a written work release to be off until September 15, 1994. Claimant then contacted Connie Guffey. He told her that he had seen Dr. Garrett for his left wrist. He told her both hands were bothering him and he had a written work release for 4 days. She told him to bring it back on Friday, September 16, 1994, when he returned to work. She also did not instruct him to see Dr. Franklin or tell him that any other doctor's bill would not be paid.

On Friday, September 16, 1994, claimant's girlfriend called into his employer and said that he was still having problems and would not be in. Claimant called later in the day and again spoke with Connie Guffey after he talked to Dr. Garrett. He told her he was not to return until the pain and swelling was gone. He asked if his girlfriend could pick up his check. Connie Guffey did not tell him to see Dr. Franklin or that other doctors' bills would not be paid. Claimant's girlfriend picked up his check later that day. She was told by the woman that gave her his check that what the claimant had done was unauthorized.

The next week claimant's wrist was getting worse. Monday or Tuesday he called Connie to find out what he should do. She then told him that Dr. Garrett's treatment was unauthorized, they were not filing a claim and he could do whatever he wanted. She did not instruct him to see Dr. Franklin. Claimant left a message for Bill Ernest to call him back. He never did so.

Claimant was terminated by the employer on September 22, 1994. They did not notify him of this, rather claimant found out he was terminated in Dr. Seaberg's report.

Claimant was given a 15–day supply of medication by Dr. Garrett. When this ran out he did not return to Dr. Garrett because he did not have the money to do so. On September 30, 1994, he was at the emergency room for his girlfriend's daughter. While there, he saw a Dr. Haggarty there. He explained what had happened to the doctor. The doctor gave him a 12–day supply of medication samples. Claimant said he did not register as a patient. There was no record made and he was not billed by Dr. Haggarty for this.

Claimant next saw Dr. Kline at the emergency room of Lake of the Ozarks General

Hospital. He went because his pain was severe and he still could not afford Dr. Garrett. In his left wrist he had stiffness, pain, swelling and tenderness. Claimant explained how his injury occurred. He was referred to Dr. J. Marcus Heim.

On October 20, 1994, claimant saw Dr. Heim. He explained that he had bumped his left hand. Dr. Heim initially treated claimant for tendonitis. Claimant's condition continued to get worse. Dr. Heim ordered an MRI which suggested a possible capitate fracture. Dr. Heim put claimant's hand in a cast. He was then referred to Dr. James F. Enckenrode at Columbia Orthopedic Group for a second opinion.

Dr. Enckenrode was uncertain of the cause of claimant's pain, suggesting a possibility of an infectious process. He suggested a gallium scan to rule out infection.

On December 7, 1994, claimant had a gallium scan which indicated infection. Dr. Heim performed surgery on claimant's left wrist on December 9, 1994, in which a culture and biopsy were obtained. Initially claimant improved, but when he stopped taking one of the antibiotics, his symptoms returned within 72 hours. Claimant has since been treated with more antibiotics. Dr. Don Miller, an infectious disease specialist, has been assisting Dr. Heim in claimant's treatment. He believes this is probable osteomyelitis of the left wrist and has been monitoring claimant's antibiotics.

Dr. Heim believes that claimant's condition is secondary to the blow he received at work on September 9, 1994, and is work related. Dr. Heim has recommended claimant begin an occupational therapy program. He also believes that claimant may need a wrist fusion if he continues to experience chronic pain. He would not want to perform this for at least a year.

The employer has paid only Dr. Franklin's bill. No medical bills were presented at the hearing.

Dr. John J. Seaberg, a plastic surgeon, was hired by the employer for an independent medical examination. He examined claimant on February 8, 1995. He also took a history from the claimant and reviewed medical records. Dr. Seaberg's deposition was admitted into evidence. In his opinion, there was no objective findings that claimant definitely has an infection, although the gallium and bone scan both suggested an infection. None of the cultures taken from the claimant actually grew any bacteria, but sometimes bacteria will not grow for a number of reasons. Dr. Seaberg did find that claimant had suffered atrophy, from nonuse, in his left arm and hand and had several abnormal findings resulting from this nonuse. Dr. Seaberg could not offer any alternative diagnosis and said he still did not know what was wrong. He could not say claimant did not have an infection. He testified that an infection would have the most serious long-term effects if not treated. He felt that Dr. Heim was safely treating what would be the most serious condition indicated, an infection. He said claimant had not reached maximum medical improvement. In response to whether he believed this was work related, he said that the only connection to work was from the claimant, and he had been inconsistent at times.

I do not find that the testimony of Dr. Seaberg is inconsistent with the other medical evidence presented. While Dr. Seaberg is perhaps skeptical that the claimant has an infection, he does not say that Dr. Heim is wrong either. Dr. Seaberg admits he does not know what is wrong with the claimant, nor will he say that claimant's condition is not work related.

I find that claimant was a credible witness and that the events occurred as he testified to them. I do not find that the employer's witnesses' testimony was credible due to many inconstencies and contradictions when the witnesses' versions are compared.

Employer presented the testimony of Bill Ernest that he never received a message from the claimant. He also at first testified that employees could go home or return after seeing the doctor and would be paid either way. He said that if claimant testified he was given the choice of light duty or leaving without pay, that would be wrong. On cross examination he later contradicted himself and said that, no, they would not be paid if they refused light work and went home.

Connie Guffey also testified that she did not talk to the claimant after he returned from Dr. Franklin on the day of the injury. She also denied talking to him on the phone after that. She said that she made an investigation to see if she could find anyone that claimant called and talked to. She could not, so the decision was made to terminate him because he had missed three days without notifying them. She denies she told him he could bring in the work release on the 12th. She said the only person she talked to was on the phone, September 14th, a woman who identified herself as claimant's wife. She says she told her that claimant's treatment was unauthorized.

Jerry Rogers, claimant's supervisor testified that someone reported to him that claimant called in on September 12, 1994. He thinks he was told this twice by two different people. He also testified that he reported to Connie Guffey that claimant had called in. He says that this was not the only call that was reported to him. He says there were two or maybe three calls from the claimant. He did not give anyone claimant's check.

The payroll clerks and a supervisor that had access to the payroll department also testified that they did not give anyone claimant's check. They did say that the check had been picked up at some time.